UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re
Advanced RISC Corporation,
    Debtor(s)

David M. Nickless, Trustee,
    Plaintiff/Appellee

v.

Merrill Lynch, Pierce, Fenner & Smith,
Inc. and Dennis Burns,
    Defendants/Appellants

Bankruptcy Appeal
C.A. No. 04-40123-NMG

**ON APPEAL FROM A JUNE 8, 2004 ORDER OF THE
BANKRUPTCY COURT DENYING MERRILL LYNCH, PIERCE,
FENNER & SMITH'S MOTION FOR SUMMARY JUDGMENT**

**BRIEF OF DEFENDANT-APPELLANT
MERRILL LYNCH, PIERCE, FENNER & SMITH**

Richard M. Zielinski (BBO #540060)
Richard W. Renehan (BBO # 416680)
Joseph C. Lyons (BBO #644954)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110
617-482-1776

Dated: November 17, 2004

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

BASIS FOR APPELLATE JURISDICTION .................................................................. 1

ISSUES PRESENTED ...................................................................................................... 1

STANDARD OF APPELLATE REVIEW ...................................................................... 1

STATEMENT OF THE CASE ......................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 3

SUMMARY OF ARGUMENT ........................................................................................ 6

ARGUMENT .................................................................................................................... 7

    I.   THE TRUSTEE LACKS STANDING TO SUE MERRILL LYNCH BECAUSE THE DEBTOR WAS A SHAM, INCAPABLE OF SUFFERING DEEPENING INSOLVENCY DAMAGES ........................................................................................................... 7

    II.  THE TRUSTEE'S CLAIMS ARE BARRED BY THE DOCTRINE OF IN PARI DELICTO ............................................................................................................. 14

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

STATUTES

11 U.S.C. § 541 .................................................................................................................. passim
11 U.S.C. §§ 101 .......................................................................................................................... 7
28 U.S.C. § 158 ............................................................................................................................ 1

A copy of 11 U.S.C.A. § 541 is provided in the Addendum at the end of this brief.

CASES

Baker v. Carr, 369 U.S. 186 (1962) ............................................................................................. 7
Berman v. Coakley, 243 Mass. 348 (1923) ................................................................................ 14
Bookland of Maine v. Baker, Newman & Noyes, LLC, 271 F. Supp.2d 324 (D. Me. 2003) ........ 9
Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416 (1972) .............................................. 8
Demoulas v. Demoulas, 703 N.E.2d 1149 (Mass. 1998) ............................................................ 15
Deposit Ins. Corp. v. O'Melveny & Myers, 61 F.3d 17 (9th Cir. 1995) ..................................... 21
E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979 (11th Cir. 1990) ............................................. 7
Feltman v. Prudential Bache Securities, 122 B.R. 466 (S.D. Fla. 1990) ............................... 9, 10
Fleming v. Lind-Waldock & Co., 922 F.2d 20 (1st Cir. 1990) ................................................... 16
Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 ........................................................... 7, 8, 16, 18
In re Chestnut Hill Mortgage Corp., 158 B.R. 547 (D. Mass. 1993) ........................................... 1
In re Donahue Securities, Inc., 304 B.R. 797 (Bankr. S.D. Ohio 2003) .................................... 21
In re Flagship Healthcare, Inc., 269 B.R. 721 (S.D. Fla. 2001) .................................................. 9
In re Gaudette, 241 B.R. 491 (D.N.H. 1999) ............................................................................... 8
In re Hedged-Investments, Inc., 84 F.3d 1281 (10th Cir. 1996) ............................................ 16, 21
In re Meridian Asset Management, Inc., 296 B.R. 243 (N.D. Fla. 2003) .................................. 11
In re Regan v. Vinick & Young (In re Rare Coin Galleries of America, Inc.), 862 F.2d 896 (1st Cir. 1988) ................................................................................................................................. 9
In re The Mediators, Inc., 105 F.3d 822 (2d Cir. 1997) ............................................................. 22
Integrated Solutions, Inc. v. Serv. Support Specialists, Inc., 124 F.3d 487 (3d Cir. 1997) ......... 16
Loyd v. Paine Webber, Inc., 208 F.3d 755 (9th Cir. 2000) ........................................................ 11
O'Halloran v. First Union National Bank of Florida, 350 F.3d 1197 (11th Cir. 2003) ...... 11, 13
Official Committee of Unsecured Creditors of Color Tile, Inc. v. Investcorp. S.A., 80 F.Supp.2d 129 (S.D.N.Y. 1999) .................................................................................................................. 15
Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2d Cir. 2003) ....................................................................................................... 19
Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340 (3d Cir. 2001) ........................................................................................................................... 9, 15, 16, 17
Perez v. Volvo Car Corp., 247 F.3d 303 (1st Cir. 2001) ............................................................ 14
Rodolakis v. Shadduck (In re Shadduck), 208 B.R. 1 (Bankr. D. Mass. 1997) ....................... 8, 9
Rome v. Braunstein, 19 F.3d 54 (1st Cir. 1994) ........................................................................... 1
Schacht v. Brown, 711 F.2d 1343 (7th Cir. 1983) .................................................................. 9, 10
Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995) ...................................................................... 21

Shanahan v. City of Chicago, 82 F.3d 776 (7th Cir. 1996) .......................................................... 11
Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991) ..................... 8, 16, 17, 18
Terlecky v. Hurd (In re Dublin Securities, Inc.), 133 F.3d 377 (6th Cir. 1997) ............... 16, 19, 20
Warth v. Seldin, 422 U.S. 490 (1975).................................................................................................. 8
Worcester v. Eaton, 11 Mass. 368 (1814).......................................................................................... 15

## BASIS FOR APPELLATE JURISDICTION

The District Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158 and the Court's Memorandum & Order of October 27, 2004.

## ISSUES PRESENTED

1) Whether the Trustee lacks standing because a "sham" corporation, such as the Debtor, is incapable of suffering injury based on "deepening insolvency"?

2) Whether application of the *in pari delicto* doctrine bars the Trustee's claims?

## STANDARD OF APPELLATE REVIEW

In reviewing an appeal from an Order of the Bankruptcy Court, the District Court reviews *de novo* the conclusions of law and legal significance afforded to facts, In re Chestnut Hill Mortgage Corp., 158 B.R. 547, 549 (D. Mass. 1993), aff'd sub nom. Rome v. Braunstein, 19 F.3d 54 (1st Cir. 1994), while findings of fact are subject to review under the "clearly erroneous" standard. Id. Here, the Bankruptcy Court Judge made no findings of fact.

## STATEMENT OF THE CASE

This case arises out of the demise of Advanced RISC Corporation ("ARC"), a sham corporation that, according to the Trustee, "may ultimately be known as the perpetrator of the most brazen fraud in recent memory, a fraud based upon history and financial information concocted out of thin air or stolen from other businesses." (A025, 193, 547)[1] Stephen K. Chan ("Chan"), Michelle Lee ("Lee"), and William D. Hulse

---

[1] All citations are to the Joint Appendix that the Trustee and Merrill Lynch submit in this matter.

GSDOCS-1424464-2

1

("Hulse"), the three principals who created and controlled ARC, also created and controlled another sham entity, Multinational Systems Corporation ("MSC"), which together with ARC constitutes the Debtor in this action. (A002, 018, 025, 046, 188-190, 196-197, 199-200, 210-211, 545-550) Using these two sham entities, Chan, Lee, and Hulse defrauded creditors out of millions of dollars through a series of bogus equipment lease deals. (A017-030, 358, 545-550) They were ultimately convicted of federal criminal charges. (A028-029, 155-185, 292-293, 545-550) Chan and Hulse are currently incarcerated at the Allenwood Federal Penitentiary. (A029-030, 336-341, 545-500)

In this action, the Trustee alleges that Dennis Burns, a former employee of Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") conspired with Chan, Lee, and Hulse to make false, fraudulent or negligent representations to creditors, in order to induce them to make loans to the Debtor. (A001-005) Although it was the creditors (if anyone) who lost money as a result Chan, Lee, and Hulse's criminal scheme, the Trustee seeks recovery against Merrill Lynch on behalf of the Debtor on a somewhat novel damages theory commonly referred to in the case law as "deepening insolvency."[2]

On June 23, 2003, Merrill Lynch moved for summary judgment on three separate grounds: (1) the Trustee lacks standing to assert the claims in this action because those claims are held only by creditors of the Debtor[3]; (2) the Trustee lacks standing to assert claims based upon a novel deepening insolvency theory because, by the Trustee's own

---

[2] In the Complaint the Trustee describes the Debtor's purported damages as incurring excessive debts and liabilities that exceeded its ability to repay. (A004) The Trustee recognizes that this theory of damages is the theory of deepening insolvency. (See Trustee's Mem. of Law in Opp'n to Motion for Leave to Appeal Filed by Merrill Lynch and Dennis Burns at 5.)

[3] The Bankruptcy Judge did not rule on this argument, which was in our briefs and we continue to press.

admission, the Debtor was a "sham corporation;" and (3) The Trustee's claims are barred by the doctrine of *in pari delicto*. (A013-014)

On June 8, 2004, the Bankruptcy Court (Rosenthal, J.) denied the Motion in a one-sentence Order stating that "it appears to the Court that there are genuine issues of material fact and therefore the Motion is denied." With the Court's permission, Merrill Lynch now appeals from that Order. (A580)

## STATEMENT OF FACTS[4]

Chan, Lee, and Hulse created and controlled ARC and MSC in order to obtain funds for their own personal use through a series of bogus equipment lease/financing deals. To carry out their scheme, they provided brokers and lenders with false information about the history, business, customers, ownership, management, and finances of MSC and ARC. (A018-031, 200, 217-275) Specifically, as part of the fraudulent scheme, MSC made the following false claims to lenders:

    (a)    that it was formed in 1971 in Texas by Lee, a Keith Stevenson, and a John Becker as MSC Company Limited (a Limited Partnership) ("MSC Co., Ltd."), even though Lee was not even born until 1972; (A019, 098, 200-203, 278-279, 545-550);

    (b)    that it engineered and manufactured "chips and IC [Integrated Circuit] related products" and "maintain[ed] technological leadership in the risk management industry," when in fact MSC never manufactured a chip or an IC [Integrated Circuit] related product and never maintained such leadership; (A020, 205-206, 545-550);

    (c)    that it was a multi-million dollar company, when in fact MSC simply concocted false and fraudulent financial statements purporting to show such wealth; (A021, 203-204, 242, 279, 545-550);

---

[4] For a more detailed statement of facts, Merrill Lynch refers the Court to its Statement of Undisputed Material Facts, incorporated herein by reference. (A016-032) Merrill Lynch refers to some of the additional facts contained in its Statement of Undisputed Material Facts in the context of specific legal arguments in this Brief.

3

(d) that a Japanese accounting firm, Asahi and Company ("Asahi"), audited the annual financial statements of MSC's purported predecessor, MSC Co. Ltd., when in fact Asahi never performed such an audit and the purported opinion letter from Asahi verifying the accuracy of those financial statements was a forgery; (A021, 209, 241, 545-550);

(e) that Mitsui Mining & Smelting Co., Ltd. ("Mitsui") owned a substantial portion - ranging from 49% to 76% - of MSC, when in fact Mitsui never owned a portion of MSC, and MSC was never a subsidiary of Mitsui; (A023, 209-210, 545-550); and

(f) that various well-known multinational corporations and governmental organizations were clients of MSC, when in fact they were not. (A022, 204-206, 210, 303-304, 545-550)

In addition, in order to maintain the illusion that it was a functioning company, MSC hired temporary employees to work in its leased offices, despite having no legitimate work for these employees. (A023, 207-208, 299-300, 308-310, 545-550) MSC also claimed that a Keith Stevenson and a John Becker were MSC officers, even though these two individuals apparently did not even *exist*. (A023, 207, 545-550) In fact, Chan would impersonate Stevenson and Becker whenever someone would call and ask for them by name. (A023-024, 207, 307, 545-550) MSC also falsely claimed that it maintained offices in Dallas, Texas and Marlborough, Massachusetts. (A024, 208-210, 280-281, 545-550) It did maintain offices in Chicago and Los Angeles, although it never conducted any business from those offices. (Id.)

Likewise, ARC obtained financing by making the following false claims to lenders:

(a) that it was established on September 9, 1986, eleven years before it was actually incorporated; (A002, 025, 084, 288, 548);

(b) that it was a multi-million dollar company, when in fact ARC simply fabricated false and fraudulent financial statements purporting to demonstrate such wealth; (A026-027, 212, 283-284, 327-332);

(c) that it "maintain[ed] technological leadership in the disaster recovery industry," when in fact ARC never even performed a disaster recovery; (A026, 069, 289, 313, 317, 548);

(d) that one of its purported "products", the Intelligent Relay System (IRS) rack, which ARC sought to lease to clients for $450,000, could forward voice or data transmissions, when in fact the IRS rack was nothing more than a "black box" that could not perform any voice or data transmission functions; it was simply a piece of hardware that a leasing company could look at; (A026, 213, 315, 320, 545-550); and

(e) that various well-known multinational corporations and governmental organizations were clients or partners of ARC, when in fact they were not. (A027-028, 212-213, 285-287, 548)

The Trustee admits that no one ever invested any equity capital in ARC or MSC. (A021, 027, 030, 282, 291, 545-550) Similarly, there is no evidence that the ARC or MSC ever had any valuable goodwill, intellectual property, or other intangible assets. (A030, 362-363) As will be argued below, these facts are critical in determining whether either entity is capable of suffering "deepening insolvency" damages.

On August 13, 1998, FBI agents raided the office of ARC at its 250 Locke Drive location in Marlborough, Massachusetts, and on May 20, 1999, the Grand Jury issued a Superseding Indictment charging Chan, Lee, Hulse, and others with conspiracy, mail fraud, and wire fraud based on the facts outlined above. (A028-029, 87-154, 545-550) In addition, Chan was charged with bank fraud, and Chan and Lee were both charged with money laundering. (Id.) Chan, Lee, and Hulse, among others, pled guilty to, and were found guilty of, the conspiracy charge set forth in Count One of the Superseding Indictment.[5] (A029, 292-293, 545-550) Chan, Lee, and Hulse signed plea agreements in which each one of them "expressly and unequivocally admit[ted]" that he/she "knowingly, intentionally, and willfully committed" the crimes charged in Count One,

which is set forth in the first 124 paragraphs of the Superseding Indictment and described ARC and MSC as "primarily sham entities." (A029, 088, 156-185, 545-550)

As a result of these crimes, Chan is in the midst of serving a 51-month prison sentence, and Hulse is in the midst of serving a 24-month prison sentence, in Allenwood Federal Penitentiary. (A029, 336-341, 545-550) Lee was sentenced to 5 months in prison. (A029-030, 343-344, 545-550)

The alleged deepening insolvency damages that the Trustee seeks to recover are – dollar-for-dollar – the damages that the Debtor's creditors have asserted against the estate. Those alleged damages, totaling approximately $13,900,000, are summarized in Schedule 2 to the report of the Trustee's expert, Howard Gordon. (A358, 030, 348-358, 548) It is apparent on the face of Schedule 2 that the damages consist of the unpaid balances of loans made by specific, named creditors who were the purported victims of the Debtor's fraudulent scheme, reduced by the value of certain assets that the Debtor acquired using the proceeds of those loans. (Id.) Because ARC and MSC no longer exist, it is undisputed that any recovery in this case will redound solely to the creditors as there are no shareholders to these sham entities. (Id.) Several of those creditors have asserted their own independent claims against Merrill Lynch, and some have settled directly with Merrill Lynch. (A030-031, 036-037, 365-383, 548-549)

## SUMMARY OF ARGUMENT

Merrill Lynch is entitled to summary judgment on at least two separate grounds.[6] First, as a sham entity, the Debtor was incapable of suffering deepening insolvency

---

[5] Chan also plead guilty to, and was found guilty of, the mail fraud charge set forth in Count Seven. (A029, 292-293, 545-550.)

[6] The third ground is referred to in footnote 2 above.

damages, and, therefore, the Trustee lacks standing to pursue such a claim against Merrill Lynch. The rationale articulated by those courts that have permitted recovery of deepening insolvency damages is that a legitimate corporation may be revitalized or shareholder equity preserved if the insolvency is disclosed timely. Such a theory is inapplicable to a sham entity like the Debtor, which had no true equity, goodwill, or intellectual property.

Second, the Trustee's suit is barred by the doctrine of *in pari delicto*. It is a fundamental principle of bankruptcy law that a trustee succeeds only to the rights and property interests that the debtor possessed *before* the bankruptcy proceeding was filed. See 11 U.S.C. § 541. Since the Debtor itself perpetrated the fraud, the Trustee cannot recover from a third party for aiding and abetting the Debtor's own fraudulent conduct. Although there currently are no reported First Circuit decisions expressly on point, four other Circuits have applied the *in pari delicto* doctrine to bar the claims of bankruptcy trustees against third parties under facts virtually identical to those in this case.

## ARGUMENT

I. **THE TRUSTEE LACKS STANDING TO SUE MERRILL LYNCH BECAUSE THE DEBTOR WAS A SHAM, INCAPABLE OF SUFFERING DEEPENING INSOLVENCY DAMAGES**

The Trustee cannot meet his burden of showing that he has standing under both Article III of the United States Constitution ("Article III") and the Bankruptcy Code.[7] U.S. CONST. art III; 11 U.S.C. §§ 101 et seq., as amended; Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092-94 (2d Cir. 1995) (discussing trustee's burden); E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1990) (same). Under Article III, a

---

[7] Standing "is, of course, a question of federal law." Baker v. Carr, 369 U.S. 186, 204 (1962).

plaintiff has standing to bring an action only if he has suffered a "distinct and palpable" injury, such that he has a "personal stake in the outcome" of the case. Warth v. Seldin, 422 U.S. 490, 498, 501 (1975). Under the Bankruptcy Code, a bankruptcy trustee is the representative of the debtor's estate and may assert only those "legal or equitable interests *of the debtor* at the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added); In re Gaudette, 241 B.R. 491, 497 (D.N.H. 1999) (the bankruptcy trustee "step[s] into the shoes of the debtor"). Therefore, a bankruptcy trustee has standing to assert only those claims that are actually based upon a "direct and palpable injury" *to the debtor* as of the commencement of the bankruptcy case. See Hirsch, 72 F.3d at 1093 (a bankruptcy trustee "can only maintain those actions that the debtors could have brought prior to the bankruptcy proceedings"); Gaudette, 241 B.R. at 498 (the Bankruptcy Code was not intended to expand a debtor's rights "more than they exist" at the outset of the bankruptcy case). Specifically, a bankruptcy trustee does not have standing to assert claims that belong only to the creditors. Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 428 (1972) ("[N]owhere in the [bankruptcy] scheme is there any suggestion that the trustee ... is to assume the responsibility of suing third parties on behalf of [creditors].")[8]; Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991) ("It is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors ...."); Gaudette, 241 B.R. at 498 ("[I]f the cause of action belongs solely to the creditors, the [bankruptcy] trustee

---

[8] Following Caplin, Congress has considered – and rejected – an amendment to the Bankruptcy Code that would have overruled Caplin and granted trustees the power to sue on behalf of creditors in certain circumstances. See In re Shadduck, 208 B.R. 1, 3-4 (Bankr. D. Mass. 1997) (comparing H.R. 8200, 95 Cong., 1st Sess. § 544(c) (1977), the bill promulgated by the House of Representatives containing the provision overruling Caplin, with S.2266, 95 Cong., 2nd Sess. (1998), the Senate bill containing no such provision).

has no standing to assert it."); Rodolakis v. Shadduck (In re Shadduck), 208 B.R. 1, 2 (Bankr. D. Mass. 1997) ("[T]he [t]rustee is asserting the claims of creditors .... This he may not do."); see also In re Regan v. Vinick & Young (In re Rare Coin Galleries of America, Inc.), 862 F.2d 896, 900 (1st Cir. 1988) (stating, in dictum, that a "trustee ... has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them") (citing Caplin.)

The Trustee has asserted that the Debtor suffered deepening insolvency damages. Merrill Lynch has found no Massachusetts or First Circuit case that has permitted recovery for such damages.[9] Even if a court were to allow a bankruptcy trustee to pursue such a theory in an appropriate case,[10] it should not do so in *this* case because MSC and ARC were sham corporations and, therefore, could not have suffered deepening insolvency damages.

Courts have held that the *sine qua non* of the deepening insolvency theory is that a legitimate corporation may be revitalized or shareholder equity preserved if the insolvency is disclosed timely. See In re Flagship Healthcare, Inc., 269 B.R. 721, 728 n.4 (S.D. Fla. 2001) (likening the debtor's position in a deepening insolvency situation to "a

---

[9] The Trustee has cited Bookland of Maine v. Baker, Newman & Noyes, LLC, 271 F. Supp.2d 324 (D. Me. 2003), for the proposition that deepening insolvency has been recognized within the First Circuit. That case, however, did not involve Massachusetts law, (see id. at 326 n.3), and more importantly, did not address the question of whether sham corporations can suffer deepening insolvency damages.

[10] Courts have found that deepening insolvency constitutes the "artificial and fraudulently prolonged life [of a failing corporation] ... and ... consequent dissipation of [corporate] assets" and that this theory "constitutes a recognized injury for which a corporation can sue under certain conditions." Feltman v. Prudential Bache Securities, 122 B.R. 466, 473 (S.D. Fla. 1990). The United States Court of Appeals for the Third Circuit also approved of the theory because deepening insolvency may "hurt a corporation's ability to run its business in a profitable manner" and "undermine a corporation's relationships with its customers, suppliers, and employees" which, in turn, can call "into question [the corporation's] ability to perform, thereby damaging the corporation's assets." Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc. 267 F.3d 340, 349-50 (3d Cir. 2001). The United States Court of Appeals for the Seventh Circuit also approved of the theory in part because "in most cases, it would be crucial that the insolvency of the corporation be disclosed, so that shareholders may exercise their right to dissolve the corporation in order to cut their losses." Schacht v. Brown, 711 F.2d 1343, 1350 (7th Cir. 1983).

9

boxer with one black eye who, despite being injured, might still persevere and win the fight" and finding that "[i]n the world of corporate workouts, turnaround managers and the possibility for a quick change in an economic tide, it is not uncommon for a corporation to revitalize itself and work out financial problems no matter how dire they appear"); Schacht v. Brown, 711 F.2d 1343, 1350 (7th Cir. 1983) (noting that deepening insolvency is a valid cause of action, in part, because undisclosed insolvency injures shareholders by impairing their ability to dissolve the corporation and cut their losses). This is manifestly not the case here. It is undisputed that neither MSC nor ARC had any true equity (i.e., invested capital), goodwill, intellectual property, or shareholders who could have been recipients of any disclosure. (A021, 027, 030, 282, 291, 362-363, 545-550) The companies existed solely as "engines of fraud" to facilitate Chan, Lee, and Hulse's scheme to defraud creditors.

Despite a growing acceptance of the deepening insolvency theory, courts have held that trustees of sham corporations in bankruptcy lack standing to bring deepening insolvency claims, because sham corporations are incapable of suffering injury in fact as required under Article III. In Feltman v. Prudential Bache Securities, 122 B.R. 466, 473 (S.D. Fla. 1990), the district court found that two debtor corporations, which, through their trustee, were suing their brokers, bankers and accountants under a deepening insolvency theory, were "simply fictitious ... sham corporations, alter egos with no corporate identity .... as [they] were essentially only conduits for stolen money ...." 122 B.R. at 473. Accordingly, the court found that the deepening insolvency injuries allegedly suffered by the debtors were "coterminous" with the defrauded creditors' injuries, thereby rendering "any alleged injury to the debtors ... as illusory as was their