corporate identity." Id. at 473-4; see also In re Meridian Asset Management, Inc., 296 B.R. 243, 252-53 (N.D. Fla. 2003). Similarly, in O'Halloran v. First Union National Bank of Florida, 350 F.3d 1197 (11th Cir. 2003), the Eleventh Circuit ruled that the bankruptcy trustee had no standing to sue the Debtor's bank to recover damages stemming from the Debtor's own fraudulent conduct. Id. at 1203. It reasoned, "[The Debtor], whose primary existence was as a perpetrator of the Ponzi scheme, cannot be said to have suffered injury from the scheme it perpetrated." Id.

In his Objection to Merrill Lynch's Motion for Summary Judgment, the Trustee cited one case, Loyd v. Paine Webber, Inc., 208 F.3d 755 (9th Cir. 2000), for the proposition that a sham company is capable of suffering damages. However, that decision failed to recognize that the fundamental rationale underlying the deepening insolvency theory, i.e., that timely disclosure of insolvency may revitalize a legitimate corporation or preserve shareholders' equity does not apply in the case of a sham corporation like the Debtor.

Despite the Trustee's unequivocal allegation in the Complaint that the Debtor was a sham, the Trustee has reversed course and now claims that ARC and MSC were not sham entities in an attempt to create a triable issue of fact.[11] First, a party may not, for purposes of avoiding summary judgment, amend or otherwise alter his complaint through arguments in opposition to a motion for summary judgment. See Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996). Even if the Court permits the Trustee to

---

[11] At oral argument on Merrill Lynch's Motion for Summary Judgment, Trustee's counsel stated, "Your Honor, I will admit that the complaint states that the debtor was a sham. However, your Honor, the choice of words was not the best." (A572)

retreat from its earlier pleading, the Trustee has failed to produce evidence sufficient to create a triable issue on whether Debtor was a sham. Despite the nine testimonial depositions and thousands of documents produced in this case, the only evidence that the Trustee could muster at the summary judgment stage to show that these were legitimate entities were a series of documents showing that customers signed contracts and paid MSC and ARC approximately $43,150, ostensibly for computer tape storage services. (A439-517) The fact that a few customers paid MSC or ARC some money before the elaborate fraud was exposed, however, hardly proves that MSC or ARC were not shams. Indeed, the very documents relied on by the Trustee suggest that several of these customers apparently realized the truth and cancelled their contracts with ARC prior to the indictment. (A453, 493-494.) In any event, these *de minimis* payments do not create a triable issue as to whether these were legitimate businesses, in light of MSC's false claims that it had stockholder equity in 1995 of $126,397,000, and ARC's false claims that it had assets of $15,620,940 in 1997 and income before taxes of $13,263,673 for just over half of that year. (A203-204, 212, 242, 279, 283-284, 327-332) As this Court apparently recognized in its Memorandum & Order allowing this appeal to proceed, there simply is no genuine issue of material fact as to whether the Debtor was a sham company. (Mem. & Order dated Oct. 27, 2004, at 3.)

Moreover, even if the Court assumes that MSC or ARC obtained $43,150 as part of some legitimate business activity, the lack of any nexus between that activity and the $13,900,000 in deepening insolvency damages claimed in this case is fatal to the Trustee's claim. Those damages consist – dollar-for-dollar – of the millions of dollars that the Debtor obtained from creditors by means of fraud. (A030, 358) The Eleventh

Circuit's opinion in O'Halloran v. First Union National Bank of Florida, 350 F.3d 1197 (11th Cir. 2003), illustrates this fatal defect. In O'Halloran, the debtor, Greater Ministries, operated a vast Ponzi scheme called the "Double-Your-Blessings Program" that bilked $500,000,000 from its investors. Id. at 1199. Although Greater Ministries did conduct church services and engage in legitimate charitable services, its significance was "largely as a vehicle for a Ponzi scheme," in which the church offered to double an investor's money if that investor successfully solicited two others to commit funds equal to the amount contributed by the original investor. Id. The man who ran Greater Ministries and his wife were convicted of federal crimes and sentenced to prison. Id. at 1200. Following the involuntary bankruptcy of Greater Ministries, a trustee was appointed and he brought a claim along with two investors against Greater Ministries' bank. Id. The Eleventh Circuit correctly stated that the debtor "cannot be said to have suffered injury from the [Ponzi] scheme it perpetrated," and commended the trustee for "not pursuing such a fruitless claim." Id. at 1203. The court further explained, however, that Greater Ministries could suffer a cognizable legal injury if a burglar stole money from its safe, regardless of whether Greater Ministries obtained that money through its fraudulent scheme, since in that instance it had voidable title to the funds. Id. at 1204. The Trustee in this case can find no solace in the burglar analogy because the Debtor cannot be found to have suffered injury from its own fraudulent schemes. By seeking to recover the money that the Debtor obtained through fraud, the Trustee here is clearly pursuing the "fruitless claim" that the law does not permit.

## II. THE TRUSTEE'S CLAIMS ARE BARRED BY THE DOCTRINE OF IN PARI DELICTO

Merrill Lynch is also entitled to summary judgment on the ground that the Trustee's suit is barred by the doctrine of *in pari delicto*. As the Court has noted in its October 27, 2004 Memorandum & Order, "there is no genuine issue of material fact [on the *in pari delicto* question] because the debtor's participation in the fraud is clear."[12] Therefore, the only remaining question is a legal one – whether the doctrine should apply to a bankruptcy trustee who seeks to recover from a third party for damages stemming from the Debtor's own fraudulent conduct.

With limited exceptions not applicable here, Massachusetts has long recognized the doctrine of *in pari delicto* as preventing a plaintiff from asserting a claim against a defendant if the claim results from the plaintiff's own wrongdoing. Berman v. Coakley, 243 Mass. 348, 350 (1923) (recognizing the defense in the context of attorneys and their clients, "It is a doctrine so well settled as not to be open to discussion that courts will not

---

[12] The Trustee has admitted that the Debtor "was controlled at all relevant times by Chan, Hulse, and Lee, all of whom oversaw [the Debtor's] financial affairs, and managed and directed its day-to-day operations, which consisted largely of obtaining lease financing from various lenders." (A018, 025, 545-550, 188-190, 196-197, 199-200, 210-211) Ignoring his own admission that the Debtor was in fact controlled at all times by Chan, Lee, and Hulse, the Trustee suggested in his opposition to Merrill Lynch's Motion for Summary Judgment that a director or officer existed who could have prevented the criminal activities. (A550) The Trustee, however, failed to produce any admissible evidence of any such independent director or officer, despite the voluminous and costly discovery in this case. See Fed. R. Civ. P. 56 (e). Instead, the Trustee cited only to a Complaint from another case, Century Bank and Trust Co. v. Advanced RISC Corporation, et al., 98-4292C (Mass. Superior Court). (A537-540.) First and foremost, that Complaint merely lists alleged directors as parties. It provides no evidence that these individuals, even if they existed, exercised any independent control over ARC. (See id.) Moreover, the Complaint in Century Bank fails to establish that the verifier had any personal knowledge as to the actual directors of ARC, and should therefore be stricken or disregarded by the Court. See Fed. R. Civ. P. 56(e); Perez v. Volvo Car Corp., 247 F.3d 303, 315-17 (1st Cir. 2001) (striking those portions of an affidavit that were not based on personal knowledge as well as those portions that were "insufficiently supported with particularized factual information"). The requirement of personal knowledge is especially critical in a case such as this one, in which the Debtor had fictitious employees, founders, and officers. In short, the Trustee has failed to produce any competent, admissible evidence of an independent officer or director who could have stopped Chan, Lee, and Hulse from their sole mission of fleecing creditors.

aid in the enforcement, nor afford relief against the evil consequences of an illegal or immoral contract..."); Worcester v. Eaton, 11 Mass. 368, 377-78 (1814) ("[W]here two parties agree in violating the laws of the land, the Court will not entertain the claim of either party against the other, for the fruits of the such an unlawful bargain.").

The defense of *in pari delicto* was established precisely in order to prevent criminals or tortfeasors from using the legal process to recover damages that they themselves caused: "[A] plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 354 (3d Cir. 2001). Recently "[t]he defense ... has been expanded by contemporary efforts to cover situations more closely analogous to the 'unclean hands' doctrine, where the plaintiff has participated in some of the same sort of wrongdoing as the defendant." Official Committee of Unsecured Creditors of Color Tile, Inc. v. Investcorp. S.A., 80 F.Supp.2d 129, 138 (S.D.N.Y. 1999).

The Trustee's own allegations in the Complaint present a textbook case for the application of the *in pari delicto* defense: the convicted criminals who created and controlled the Debtor allegedly conspired with a former employee of Merrill Lynch (who was also convicted) to defraud brokers and lenders. Moreover, as this Court has recognized, the criminal actions of Chan, Lee, and Hulse taken in their capacities as officers of the Debtor must be imputed to the Debtor under Massachusetts law. See October 27, 2004 Memorandum & Order at 4 (quoting Demoulas v. Demoulas, 703 N.E.2d 1149, 1171 (Mass. 1998)).

The Trustee here is subject to the application of the *in pari delicto* doctrine. It is a *fundamental principle* that a trustee in bankruptcy succeeds only to the rights and

property interests that the debtor possessed pre-petition. See 11 U.S.C. § 541; Integrated Solutions, Inc. v. Serv. Support Specialists, Inc., 124 F.3d 487, 492-93 (3d Cir. 1997). The corollary to this rule is that a bankruptcy trustee is subject to all defenses that could have been raised against the debtor pre-petition. Lafferty, 267 F.3d at 357; In re Hedged-Investments, Inc., 84 F.3d 1281, 1285 (10th Cir. 1996). The United States Courts of Appeal for the Second, Third, Sixth, and Tenth Circuits have all applied the doctrine of *in pari delicto* to dismiss claims identical to those asserted here. R.F. Lafferty & Co, 267 at 358-60; Terlecky v. Hurd (In re Dublin Securities, Inc.), 133 F.3d 377, 381 (6th Cir. 1997); In re Hedged-Investments, Inc., 84 F.3d 1281, 1282-85 (10th Cir. 1996); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088-90, 1093-94 (2d Cir. 1995); Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 120 (2d Cir. 1991).[13]

In Lafferty, the Third Circuit affirmed the dismissal of claims against third parties brought by a creditors' committee (pursuant to appointment by the trustee) alleging deepening insolvency resulting from the fraudulent actions of the debtor's sole shareholder and professionals employed by the debtor. 267 F.3d at 344-45. After finding that Pennsylvania law recognized the doctrine of *in pari delicto*, the court rejected the argument that post-petition events have any bearing on the applicability of an *in pari delicto* defense against a trustee (or a committee pursuant to appointment by the trustee) suing on a claim allegedly held by the debtor or its estate, holding that the:

> plain language of section 541 [of the Bankruptcy Code] ... prevents courts from taking into account events that occur after the commencement of the bankruptcy case. As a result we must

---

[13] There currently are no reported decisions in the First Circuit applying the *in pari delicto* doctrine in a bankruptcy context such as this. However, the First Circuit does generally recognize the doctrine. See Fleming v. Lind-Waldock & Co., 922 F.2d 20, 28 (1st Cir. 1990) (a co-conspirator may not sue another co-conspirator pursuant to the doctrine of *in pari delicto*).

>  evaluate the *in pari delicto* defense without regard to whether the Committee is an innocent successor.

Id. at 357. Accordingly, the court held that the estate's rights were "no stronger than they were when actually held by the debtor." Id. (quoting Hedged-Investments, 84 F.3d at 1285-86).

Based upon the allegations in the Committee's complaint, the Lafferty court imputed the tortious conduct of the debtor's sole shareholder to the corporation itself. Id. at 359. The court found that: (i) the wrongful conduct was perpetrated while the debtor was controlled solely by the tortfeasor-shareholder, and (ii) although the conduct was adverse to and not for the benefit of the corporation, the "adverse interest exception" did not apply because the tortfeasor was the sole shareholder of the corporation, thus triggering the so-called "sole actor exception." Id. at 359-60. The court concluded its decision by stating:

> In sum, we will impute the fraudulent conduct of the Shapiros to the Debtors because the Shapiros perpetrated the alleged fraud in the course of their employment, and because, *although the Shapiros may have acted adversely to the interests of the Debtors, they were the sole actors engaged in the alleged fraudulent conduct.* Viewing the claim as of the commencement of the bankruptcy, we find that the *in pari delicto* doctrine bars the Committee, standing in the shoes of the Debtors, from bringing its claims against Lafferty.

Id. at 360 (emphasis added).

The Second Circuit has also found that the defense of *in pari delicto* barred a trustee's claims against third parties where the debtor was responsible for the fraudulent or otherwise tortious conduct alleged in the complaint. Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991), involved a claim by the bankruptcy trustee against the debtor's security broker, which was accused of churning the debtor's trading

accounts and of breaching its fiduciary duties by facilitating extremely speculative trades ordered by the debtor's sole shareholder. Id. at 117.

The court held that the trustee lacked standing to prosecute claims that Shearson had assisted the debtor's principal in defrauding the debtor's investors. It held that such claims alleged damages suffered exclusively by the investors and, accordingly, could not have been brought by the corporation prior to bankruptcy. Id. at 119-20. With respect to the *in pari delicto* defense, the court held that the trustee could not maintain suit against Shearson for aiding in the fraud because the debtor's "*sole stockholder and decision maker ... not only knew of the bad investments, but actively forwarded them.*" Id. at 120 (emphasis added).

The Second Circuit revisited this issue again in Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (2d Cir. 1995). In Hirsch, the debtor was a formerly legitimate investment company that was allegedly converted into a Ponzi scheme to defraud investors. Id. at 1088-92. The trustee alleged that Andersen assisted in orchestrating the fraudulent scheme, that Andersen supplied misleading information to defrauded investors, and that Andersen provided deficient services to the debtor. Id. at 1092. The Second Circuit dismissed the complaint on the grounds that the trustee was impermissibly asserting claims held by creditors and that, even assuming the corporation could have suffered injury, the trustee was barred from bringing such a claim because the debtor had been *in pari delicto* with respect to the scheme. Id. at 1093-94.

Later, the Second Circuit found that the *in pari delicto* defense operated as a complete bar to breach of fiduciary duty claims asserted by a creditors' committee where the debtor's board of directors was found to have collaborated with the debtor's

accountants in allowing the debtor to enter into transactions on the basis of inflated economic projections. Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 161-66 (2d Cir. 2003).

In Terlecky v. Hurd (In re Dublin Securities, Inc.), 133 F.3d 377 (6th Cir. 1997), the United States Court of Appeals for the Sixth Circuit affirmed the dismissal of a trustee's complaint solely on the grounds that the debtor was *in pari delicto* with respect to a fraud scheme. Id. at 381. Over the course of seven years, the debtor and its related entities made approximately $60 million worth of fraudulent securities sales before being shut down and forced to declare bankruptcy. Id. at 379. All of the debtor's principals were convicted on state criminal charges as a result of the fraudulent scheme. Id.

During the period in which the debtor facilitated its fraudulent stock offerings, it was represented by attorneys who prepared all legal documents for the fraudulent securities sales, provided regular legal advice to the debtor, and served as special counsel for the securities issuers. Id. The trustee filed suit against the debtor's law firms and attorneys, alleging that the defendants knew or should have known of the illegal nature of the activities in which the debtor was engaging and failed to counsel the corporation regarding the illegalities. Id. The trustee's complaint alleged negligence, breach of fiduciary duty, negligent misrepresentation, recklessness, common law fraud, and the right of contribution. Id. The district court dismissed the complaint due to lack of trustee standing and because the trustee's suit was barred by the doctrine of *in pari delicto*. Id.

The Sixth Circuit affirmed exclusively on its finding that the defense of in *pari delicto* barred the trustee's complaint. Id. at 380. The court found that even if the trustee

arguably had standing to bring suit against the law firms,[14] "the equitable defense of *in pari delicto* can properly be applied ... to dismiss the trustee's claims." Id. The trustee asserted that *in pari delicto* should only apply if the debtor was of equal or greater fault than the defendants, and that this was necessarily a question of fact to be resolved at trial. Id. The Sixth Circuit found the trustee's argument unavailing:

> [The trustee] admits in his complaint that the debtors' own actions were instrumental in perpetrating the fraud on the individuals choosing to invest in the Dublin Securities schemes. That pleading concedes, for example, that the debtors intentionally defrauded their investors. *Such purposeful conduct thus establishes conclusively that the debtors were at least as culpable as the defendants in this matter.*

Id. (emphasis added). Moreover, the court noted that the trustee's complaint alleged that the debtor corporation was merely the alter ego of the officers and directors, who "controlled the corporation [and] that the corporation had no separate mind, will, or existence of its own." Id. Thus, the Sixth Circuit found it appropriate to impute the officers' and directors' fraud to the corporation itself. Id. Accordingly, the court affirmed the district court ruling dismissing the trustee's suit solely on the basis that the debtor was *in pari delicto*.

The Trustee's arguments that he is an innocent successor to the Debtor and that public policy interests warrant disregarding the *in pari delicto* doctrine have been soundly rejected by every Circuit court that has considered them. To date, the Trustee has relied on a dissenting opinion in Lafferty and two *receivership* cases for the proposition that the *in pari delicto* defense is inapplicable where individual officers or directors who perpetrated criminal or tortious actions have been removed from the corporation and

---

[14] Presumably on the grounds that the debtor suffered particular injury distinct from that suffered by the defrauded investors.

20

where the officers and directors would not benefit from a recovery by the receiver. The rationale for those cases, however, has been rejected in the bankruptcy context.

In Hedged-Investments, for example, the trustee invoked one of the cases cited by the Trustee, Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995), for the proposition that his role as bankruptcy trustee should cause him to be immune from the *in pari delicto* defense. The United States Court of Appeals rejected the trustee's argument, finding that the law of bankruptcy and the law of receivership were distinct, and stating that "one who has himself participated in a violation of the law cannot be permitted to assert ... any right founded upon ... the illegal transaction." 84 F.3d at 1284 (citations omitted). The court's analysis was directed by the fact that, pursuant to 11 U.S.C. § 541, a trustee succeeds only to the interests held by the debtor and, as such, the trustee is subject to those defenses that would have been available against the debtor. Id. at 1285. The court emphasized that, by enacting section 541 of the Bankruptcy Code, Congress intended a trustee "to stand in the shoes of the debtor and 'take no greater rights than the debtor himself had.'" Id. (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 368 reprinted in 1978 U.S.C.C.A.N. 5963, 6323).

Following Hedged-Investments, a November 2003 decision, In re Donahue Securities, Inc., 304 B.R. 797 (Bankr. S.D. Ohio 2003), accepted Merrill Lynch's argument that a bankruptcy trustee is subject to the *in pari delicto* defense:

> [T]he Trustee argues that, even if Donahue's misconduct can be imputed to DSI, the misconduct cannot be imputed to an innocent successor in interest such [as] a bankruptcy trustee. The Trustee cites Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995) and Fed. Deposit Ins. Corp. v. O'Melveny & Myers, 61 F.3d 17 (9th Cir. 1995) in support of this position. Both Scholes and O'Melveny involved actions by receivers that were not barred by the *in pari delicto* defense notwithstanding misconduct on the part of the

> entities in receivership. From a policy standpoint, these courts did not think it would be equitable to impute misconduct to an innocent *receiver*. The Trustee argues that his role in this proceeding is analogous to that of the receivers in Scholes and O'Melveny.
>
> This proceeding is easily distinguishable from Scholes and O'Melveny because of the applicability of 11 U.S.C. § 541. A trustee in a SIPA liquidation possesses the same rights as a trustee in bankruptcy. A bankruptcy trustee succeeds to "all legal or equitable interests of the debtor in property *as of the commencement of the case*[.]" Because a trustee's rights are limited to those enjoyed by the debtor "as of the commencement of the case," courts have been unpersuaded by the argument that postpetition appointment of a trustee somehow renders the doctrine of *in pari delicto* inapplicable. [Citing Lafferty and Hedged-Investments] In addition to the Third and Tenth circuits, at least two other circuits have applied the doctrine of *in pari delicto* to preclude an action brought by a bankruptcy trustee. [Citing Dublin Securities and In re The Mediators, Inc., 105 F.3d 822 (2d Cir. 1997)] ... [Therefore] we reject the Trustee's argument that the misconduct of DSI cannot be imputed to an innocent successor in interest such as himself.

304 B.R. at 799 n.4 (emphasis in original) (citations omitted). Accordingly, the Court should reject the Trustee's argument that his role as a trustee in bankruptcy should preclude application of the *in pari delicto* defense.

## **CONCLUSION**

For the foregoing reasons, Merrill Lynch requests that this Court reverse the Order of the Bankruptcy Court denying Merrill Lynch's Motion for Summary Judgment and enter judgment in its favor on all Counts of the Complaint.

MERRILL, LYNCH, PIERCE,
FENNER & SMITH, INC.

By Their Attorneys,

*/s/ Richard M. Zielinski*

Richard M. Zielinski (BBO #540060)
Richard W. Renehan (BBO # 416680)
Joseph C. Lyons (BBO #644954)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110
617-482-1776

## CERTIFICATE OF SERVICE

I hereby certify that on November 17th, 2004, I caused the foregoing to be served upon the attorneys of record listed below by mail.

_____
Joseph C. Lyons

David M. Nickless, Trustee
Janice G. Marsh, Esq.
Nickless & Phillips, P.C.
495 Main Street
Fitchburg, MA 01420

Stephen M. Salon, Esq.
Salon & Kantrowitz, LLP
Old City Hall
45 School Street
Boston, MA 02108

# ADDENDUM

Westlaw. Page 1

11 U.S.C.A. § 541

▷ Effective: [See Text Amendments]

Page 1

11 U.S.C.A. § 541

▷
**Effective: [See Text Amendments]**

United States Code Annotated Currentness
 Title 11. Bankruptcy (Refs & Annos)
  🗎 Chapter 5. Creditors, The Debtor, and the Estate (Refs & Annos)
   🗎 Subchapter III. The Estate (Refs & Annos)

→ **§ 541. Property of the estate**

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

(b) Property of the estate does not include--

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;

(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 541

expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;

(3) any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 (20 U.S.C. 1001 et seq.; 42 U.S.C. 2751 et seq.), or any accreditation status or State licensure of the debtor as an educational institution;

(4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that--

(A)(i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and

(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or

(B)(i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and

(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 542 of this title; or

(5) any interest in cash or cash equivalents that constitute proceeds of a sale by the debtor of a money order that is made--

(A) on or after the date that is 14 days prior to the date on which the petition is filed; and

(B) under an agreement with a money order issuer that prohibits the commingling of such proceeds with property of the debtor (notwithstanding that, contrary to the agreement, the proceeds may have been commingled with property of the debtor),

unless the money order issuer had not taken action, prior to the filing of the petition, to require compliance with the prohibition.

Paragraph (4) shall not be construed to exclude from the estate any consideration the debtor retains, receives, or is entitled to receive for transferring an interest in liquid or gaseous hydrocarbons pursuant to a farmout agreement.

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law--

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 541

property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 541