UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re
Advanced RISC Corporation,
        Debtor
_____

David M. Nickless, Trustee,
        Plaintiff/Appellee,

v.

Merrill Lynch, Pierce, Fenner & Smith, Inc.,
and Dennis Burns,
        Defendants/Appellants

Bankruptcy Appeal
C.A. No. 04-40123-NMG

ON APPEAL FROM THE JUNE 8, 2004, ORDER OF THE BANKRUPTCY COURT DENYING
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.'S MOTION FOR SUMMARY
JUDGMENT

_____

BRIEF OF PLAINTIFF-APPELLEE, DAVID M. NICKLESS

_____

David M. Nickless, Trustee, BBO No. 371920
Janice G. Marsh, Esq., BBO No. 638575
Nickless and Phillips, PC
495 Main Street
Fitchburg, MA 01420
978-342-4590
dnickless.nandp@verizon.net
jmarsh.nandp@verizon.net

Dated:  December 3, 2004

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES                                                                    ii

STATEMENT OF THE ISSUES                                                          1

STATEMENT OF THE CASE                                                             1

STATEMENT OF THE FACTS                                                           2

ARGUMENT                                                                            3

    I.    A "SHAM" ENTITY HAS STANDING TO SUE UNDER
        THE DEEPENING INSOLVENCY THEORY                                  3

    II.   THE <u>IN PARI DELICTO</u> DOCTRINE DOES NOT BAR THE
        TRUSTEE'S CLAIMS                                                           9

    III.  MERRILL LYNCH HAS WAIVED ITS ARGUMENT THAT
        THE TRUSTEE LACKS STANDING BECAUSE THE
        CLAIMS BELONG TO CREDITORS                                       13

CONCLUSION                                                                              17

TABLE OF AUTHORITIES

STATUTES

Mass. Gen. Laws ch. 155, § 6                                    3
Mass. Gen. Laws ch. 156B, § 9                                   3
11 U.S.C. § 541                                                 passim
11 U.S.C. § 548                                                 10
11 U.S.C. § 549                                                 11
11 U.S.C. § 550                                                 11
11 U.S.C. § 701                                                 10
11 U.S.C. § 704                                                 10

Copies of the above statutes are included in the Trustee's Addendum or in Merrill Lynch's Addendum.

CASES

Benzanson v. Thomas, 2003 WL 21434911 (D.N.H. 2003)          14
Bergeson v. Life Insurance Corp., 265 B.R. 227 (10th Cir. 1959)      5
Official Committee of Unsecured Creditors v. Boston Regional
Medical Center (In re Boston Regional Medical Center),
328 F. Supp. 2d 130 (D. Mass. 2004)                          15
Erricola v. Gaudette (In re Gaudette), 241 B.R. 491
  (Bankr. D.N.H. 1999)                                        4, 16
FDIC v. O'Melveny & Myers, 61 F.3d 17 (9th Cir. 1995)        9, 10
Feltman v. Prudential Bache Securities, 122 B.R. 466 (S.D. Fla. 1990)    7
Fleming v. Lind-Waldock & Co., 922 F.2d 20 (1st Cir. 1990)
Hirsch v. Arthur Anderson & Co., 72 F.3d 1085 (2nd Cir. 1995)    12
Kinter v. Connolly, 233 Pa. 5, 81 A. 905 (1911)             5
In re Investor's Funding Corp., [1980] Fed. Sec. L. Rep. (CCH)
  ¶ 97,696 (S.D.N.Y. 1980)                                   5
Loyd v. Paine Webber, Inc., 208 F.3d 755 (9th Cir. 2000)     7
Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)         4
Lutz v. Chitwood (In re Donahue Securities, Inc.), 304 B.R. 797
  (Bankr. W.D. Ohio 2003)                                    12
McCandless v. Furlaud, 296 U.S. 140 (1935)                  9
McNamara v. PFS a/k/a Premium Financing Specialists (In re Personal
and Business Agency), 334 F.3d 239 (3rd Cir. 2003)          10, 11
Official Committee of Unsecured Creditors v. R. F. Lafferty & Co., Inc.,
  267 F.3d 340 (3rd Cir. 2001) .                             10-12
O'Halloran v. First Union National Bank of Florida, 350 F.3d 1197
  (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8
Regan v. Vinick & Young (In re Rare Coin Galleries of
  America, Inc.), 862 F.2d 896 (1st Cir. 1986) . . . . . . . . . . . .. . . . . 14, 15 Rodolakis v.
Shadduck (In re Shadduck), 208 B.R. 1 (Bankr. D.

Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Schacht v. Brown, 711 F.2d 1343 (7th Cir. 1983) . . . . . . . . . . . . . . . .     4, 5

Scholes v. Lehmann, 56  F.3d 750 (7th Cir. 1995) . . . . . . . . . . . . . . . .     6, 9

Sender v. Buchanan (In re Hedged Investments Associates, Inc.),
 84 F.3d 1281 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Segal v. Rochelle, 382 U.S. 375 (1966) . . . . . . . . . . . . . . . . . . . . . . .     11

Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2nd Cir. 1991). .              12

Terlecky v. Hurd (In re Dublin Securities, Inc.), 133 F.3d 377
 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

STATEMENT OF THE ISSUES

With this Court's permission, Merrill Lynch, Pierce, Fenner & Smith, Inc. (hereinafter Merrill Lynch) filed a notice of appeal (Bankruptcy Court docket no. 148). Merrill Lynch has stated the issues on appeal as follows:

(1) Does the Trustee lack standing because the Debtor, an alleged "sham" corporation, is incapable of suffering injury based on the theory of "deepening insolvency"? (Bankruptcy Court docket no. 149)

(2) Does application of the <u>in pari delicto</u> doctrine bar the Trustee's claims? (Bankruptcy Court docket no. 149)[1]

STATEMENT OF THE CASE

On September 3, 1998, creditors filed an involuntary petition against Advanced RISC Corporation (hereinafter ARC). Joint Appendix submitted by Merrill Lynch and the Trustee in this matter (hereinafter "A") 001-005 (¶ 24). Shortly thereafter, David M. Nickless was appointed as the trustee. A001. On October 27, 1999, the Bankruptcy Court entered a judgment providing, among other things, that Multinational Systems Corporation (hereinafter MSC) and ARC, and other entities, were de facto merged or consolidated into ARC (hereinafter collectively ARC). A046-049.

On March 13, 2001, the Trustee commenced his actions against Merrill Lynch and Dennis Burns (hereinafter Burns) in the Bankruptcy Court. A001-005. The Trustee sued Merrill Lynch under the theories of respondeat superior and negligence for damages proximately caused by its former employee, Burns, as a result of his false, fraudulent or negligent representations or misrepresentations. A001-005. The Trustee also sued Burns for damages under the theory of

---

[1] This Court wrote in its Memorandum & Order that "there is <u>likely</u> no genuine issue of material fact with respect to whether the Debtor was a 'sham' corporation." (Emphasis added.) District Court docket no. 2, at p. 3. Although this Court later stated referred to "the lack of factual dispute," based upon the earlier statement, the Trustee does not waive his position that there are no genuine issues of material fact.

negligence. A001-005. On June 23, 2003, Merrill Lynch filed a motion for summary judgment, to which the Trustee objected. A013-015, 396-397. The Bankruptcy Court denied Merrill Lynch's motion for summary judgment based upon the existence of disputed material facts. A580. Merrill Lynch filed a motion for an interlocutory appeal, which this Court granted. Bankruptcy Court docket nos. 134 and 143.

Burns has not filed a notice of appeal and has not designated any items to be included in the record. However, he has filed a motion to adopt Merrill Lynch's brief. District Court docket no. 6. If this Court allows Burns to join in the appeal, the Trustee's brief applies to Burns as well.

<u>STATEMENT OF THE FACTS</u>

In July 1995, MSC was incorporated in the Commonwealth of Massachusetts, and on May 27, 1997, ARC was also incorporated in the Commonwealth of Massachusetts. A351.

Merrill Lynch employed Burns as a financial consultant.  A087, 092. He worked for his father, Jerry Burns, at Merrill Lynch. A410, 415-417. During that time, the ARC accounts were the largest corporate accounts Burns brought to Merrill Lynch. A417. All they saw in Steve Chan was "a great source of business for [Merrill Lynch], referrals and everything . . . . opportunity to do a lot of business." A419-420. "Burns, acting as a bank reference, falsely represented to various lease brokers, lenders and prospective lenders [of ARC] that [it] had a longstanding Merrill Lynch account that maintained an average balance in excess" of $10 million. A092.

On August 13, 1998, the FBI raided the location of ARC. A028 (¶ 35). On or about May 20, 1999, Burns, among others, was charged with, and was convicted, after pleading guilty, of one count of conspiracy and was later sentenced. A087-126, 403-408. He signed a plea agreement in which he "expressly and unequivocally admit[ted]" that he "knowingly, intentionally, and willfully committed" the crimes charged in the first 124 paragraphs of the Superseding Indictment. A403-

404. As a result, Burns was ordered to pay restitution in the amount of almost $10 million to creditors of ARC, was sentenced to a federal penitentiary for 24 to 30 months and to supervised release for 2 to 3 years. A408.

As a result of the false, fraudulent or negligent representations or misrepresentations of Burns and, through him, his employer, Merrill Lynch, ARC was able to continue to operate, and did operate, until about August 13, 1998. A096. While in operation, ARC was able to continue to purchase or lease expensive automobiles, to hire unnecessary employees, to purchase a residence for two officers and to lease expensive office space at various locations, including 222 Berkeley Street in Boston, the Trump Tower in New York City and Sears Tower in Chicago. A348-358. Between January 1, 1997, and September 3, 1998, ARC lost almost $14 million. A349. Ultimately, creditors, on September 3, 1998, filed an involuntary bankruptcy petition against ARC. A003. The bankruptcy court entered a judgment providing that MSC and other entities were de facto merged or consolidated into ARC and, as a result, were one and the same entity. A046.

<u>ARGUMENT</u>

I.    **A "SHAM" ENTITY HAS STANDING TO SUE UNDER THE DEEPENING INSOLVENCY THEORY**

A corporation formed under the laws of the Commonwealth of Massachusetts is a distinct legal entity capable of, among other things, suing and being sued, owning and holding property, and doing business. Mass. Gen. Laws ch. 155, § 6; ch. 156B, § 9. See the Addendum. Both ARC and MSC were incorporated under the laws of the Commonwealth of Massachusetts, and, therefore, were distinct legal entities. A351.

The following elements must be satisfied in order to have standing under Article III of the Constitution: (1) injury in fact, (2) causation and (3) redressability by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). These

elements are satisfied in this case: (1) ARC was injured by incurring debt beyond its ability to repay and by being forced into bankruptcy, A003, 358; (2) Merrill Lynch and Burns, through their false, fraudulent or negligent representations or misrepresentations, proximately caused that injury, A087, 092, 095-096, 348-358, 403-404; and (3) the injury will be redressed if this Court decides in favor of the Trustee.

A bankruptcy estate includes, among other things, all legal or equitable interests of the debtor in property, wherever located and by whomever held, as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1). See Merrill Lynch's Addendum. A trustee of a bankruptcy estate steps into the shoes of the debtor, may prosecute whatever claims a debtor could have as of the commencement of the bankruptcy case and "has exclusive standing to assert the estate's legal claims." Erricola v. Gaudette (In re Gaudette), 241 B.R. 491, 497 (Bankr. D.N.H. 1999) (citations omitted).

The Seventh Circuit's opinion in Schacht v. Brown, 711 F.2d 1343 (7th Cir. 1983), provides support for the Trustee's argument that a sham corporation may sue for damages under the theory of deepening insolvency. In Schacht, the plaintiff, a liquidator of an insurance company, alleged a "far-reaching scheme" in which the company's directors and outside defendants, with a smoke-screen of underlying mail fraud, "fraudulently" continued the business beyond its point of insolvency and "systematically looted" the company of its most profitable and least risky business and more than $3 million in income, thereby deepening the insolvency of the company and dissipating assets.

The defendants in Schacht argued that, because the artificial prolongation of the insolvent company's life allegedly caused the damages, the claim was barred. Disagreeing, the court concluded that the defendants' argument was based upon cases resting upon the "seriously flawed

assumption" that an insolvent corporation automatically benefits as a result of the fraudulent prolongation of its life.  711 F.2d at 1350 (citing Bergeson v. Life Insurance Corp., 265 F.2d 227, 232 (10th Cir. 1959); Kinter v. Connolly, 233 Pa. 5, 81 A. 905 (1911)). That assumption "collides with common sense" because a corporation is "ineluctably damaged by the deepening of its insolvency, through increased" debt. 711 F.2d at 1350 (citing In re Investor's Funding Corp., [1980] Fed.Sec.L.Rep. (CCH) ¶ 97,696, at 98,655 (S.D.N.Y. 1980)). "In most cases," the insolvency of the corporation should be disclosed so that shareholders may decide to dissolve the corporation. 711 F.2d at 1350 (citing Ill. Rev. Stat., ch. 32, § 157.75, 157.76 (1981)).

Schacht supports the Trustee's argument that ARC was "ineluctably damaged by the deepening of its insolvency" that resulted from the debt to creditors who relied upon the false, fraudulent or negligent representations or misrepresentations of Burns and Merrill Lynch, and ARC, and now the Trustee, has standing to sue. Whether ARC was a "sham" or not is immaterial. Having "true equity," intangible goodwill or intellectual property, as Merrill Lynch suggests, is not essential. ARC's tangible real properties located at 250 Locke Drive, Marlborough, Massachusetts, valued at $4 million, and at 12 Wolfpen Road, Southborough, sold, postpetition, by a broker for $675,000; the cash or cash equivalents of $131,851; and the personal property, auctioned, postpetition, by the Trustee for $495,834, as well as the money in accounts that ARC had at Merrill Lynch – all of which Merrill Lynch overlooks - are quantifiable. A358, 417. Moreover, the statement by the Seventh Circuit that, "in most cases," insolvency should be disclosed so shareholders could elect to dissolve the corporation indicates that the disclosure to shareholders is not mandatory.

Another Seventh Circuit opinion, Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995), provides further support for the Trustee's argument that a trustee of a sham corporation may sue for damages

under the deepening insolvency theory. In <u>Scholes</u>, a receiver for corporations formed by an individual convicted of, after pleading guilty, to fraud and used by that individual in a Ponzi scheme brought actions to recover assets dissipated through fraudulent conveyances from the individual, his former spouse and religious organizations that had received corporate assets. The first issue the court addressed was whether the receiver had standing to sue. The court likened an equity receiver, attempting to redress injuries to a corporation in receivership, to a trustee in bankruptcy, attempting to redress injuries to a debtor. The defendants asked rhetorically how the corporations used in the Ponzi scheme could have been injured. The court gave what it called a "straightforward" answer: "The corporations, . . . robotic tools, were nevertheless in the eyes of the law separate legal entities with rights and duties." 56 F.3d at 754.

The court recognized the following alternatives to the receiver's actions: (1) a series of individual suits by the investors, which would result in multiple litigation; (2) a "clumsy" class action; or "most plausibly," (3) an adversary proceeding commenced by a trustee if the corporations were forced into bankruptcy. Since the defrauded investors were tort creditors and the corporations had been insolvent from the outset, the creditors could have commenced involuntary bankruptcy petitions against the corporations. However, neither the creditors nor the debtors had commenced bankruptcy proceedings, perhaps because "[c]orporate bankruptcy proceedings are not famous for expedition." 56 F.3d at 755.

Similarly, just as the receiver in <u>Scholes</u> was attempting to redress injuries to the corporations in receivership, the Trustee is attempting to redress injuries to ARC. Assuming that ARC was a "sham," it was, nevertheless, in the eyes of the law, a separate legal entity with rights and duties. Additionally, assuming, without admitting, that ARC was insolvent from the outset, creditors could have commenced an involuntary petition against ARC. In fact, creditors did

commence an involuntary bankruptcy petition against ARC more than six years ago, perhaps an example of a nonexpeditious bankruptcy proceeding cited by the Seventh Circuit in Scholes. Once the bankruptcy case was commenced, the Trustee's adversary proceeding against Merrill Lynch and Burns became the "most plausible" alternative to redressing the injuries to ARC measured by its deepening insolvency. See also Loyd v. Paine Webber, Inc., 208 F.3d 755, 758 (9th Cir. 2000) (holding that a bankruptcy trustee had standing to sue, among others, the debtor's former law firm for malpractice even if the sole purpose of the debtor was to serve as an "engine of fraud").

Cases cited by Merrill Lynch are distinguishable.  As Merrill Lynch points out in its appellant's brief, the court in Feltman v. Prudential Bache Securities, 122 B.R. 466 (S.D. Fla. 1990), found that the deepening insolvency injuries allegedly suffered by the debtors were "coterminous" with the injuries to the defrauded creditors, thereby rendering "any alleged injury to the debtors . . . as illusory as was their corporate identity." Thus, the court based its conclusion upon the fact that the only damages were damages to the creditors of the debtors.

Feltman is distinguishable because ARC was injured. Based upon Burns' false, fraudulent or negligent representations or misrepresentations, creditors loaned money to ARC. A095-096. ARC had a number of creditors, whose claims exceed $19 million. A358. Money went into ARC and was spent, resulting in the dissipation of assets of, and injury to, ARC. The ability of ARC to obtain financing beyond its ability to repay the debts, as well as expenditures of funds that otherwise would not have been available to ARC and the dissipation of its assets, injured ARC. A351. As discussed in argument III below, ARC was injured and, as a result, the Trustee has standing.

Similarly, O'Halloran v. First Union National Bank of Florida, 350 F.3d 1197 (11th Cir. 2003), is also distinguishable. In O'Halloran, the debtor, a corporation, was in operation through the 1980s and 1990s, and one of its directors embezzled money between 1995 and 1998. The court

pointed out that the trustee's complaint did not suggest there had been an absolute identity of interests between the corporation and the director and that, if the corporation were criminal, it also had a significant membership and governing body. The court concluded, as a result, that the organization could have been injured by the director's wrongful embezzlement. 350 F.3d at 1204.

In the instant matter, this Court stated in its Memorandum & Order that "there is <u>likely</u> no genuine issue of material fact with respect to whether [ARC] was a 'sham' corporation." (emphasis added.) This suggests ARC was not a sham corporation. ARC owned real property valued at $4,675,000; had cash or cash equivalent property valued at $131,851; and personal property, auctioned by the Trustee, worth $495,834. A358. ARC was a nascent corporation, having only recently come into existence. A351. ARC had the potential to become a disaster recovery organization, particularly after the attack on the World Trade Center on September 11, 2001. A520-528. Applying the reasoning in <u>O'Halloran</u>, ARC could have been, and was, injured.

Therefore, the Trustee has standing to bring the claims upon behalf of ARC, and the Trustee may sue for damages under the theory of deepening insolvency.

## II.    THE **IN PARI DELICTO** DOCTRINE DOES NOT BAR THE TRUSTEE'S CLAIMS

As this Court stated in its Order & Memorandum, the First Circuit generally has recognized the in pari delicto doctrine. See Fleming v. Lind-Waldock & Co., 922 F.2d 20, 28 (1st Cir. 1990) (citing Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 635, 101 S.Ct. 2061, 2064, 68 L.Ed.2d 500 (1981)). The raison d'être of the defense is that a wrongdoer must not be allowed to profit from his wrong. Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 354 (3rd Cir. 2001); Scholes, 56 F.3d at 754. "Put differently, the defense of in pari delicto loses its sting when the person . . . in in pari delicto is eliminated." Scholes, 56 F.3d at 754 (citing McCandless v. Furlaud, 296 U.S. 140, 160, 56 S.Ct. 41, 47, 80 L.Ed. 121 (1935)). Thus, the ultimate question is whether a wrongdoer will be able to participate in any recovery.

In Scholes, once the person who had created the corporations was convicted of fraud and was removed from control, the receiver had the duty to maximize the value of the corporation for the benefit of creditors. The Seventh Circuit saw no legal or practical reason why the in pari delicto defense should prevent the receiver from recovering. As the court recognized, the "most plausible" alternative to the receiver's action would be a trustee commencing an adversary proceeding if the corporations were forced into bankruptcy. 56 F.3d at 755.

While a party's actions may prevent the party from asserting a right or defense, there is little reason to punish a bankruptcy trustee or other innocent party that steps into the party's shoes as a result of a statutory law or court order. FDIC v. O'Melveny & Myers, 61 F.3d 17, 19 (9th Cir. 1995) (receivership proceeding). Otherwise, the defendant would always enjoy a windfall. 61 F.3d at 19. A trustee, unlike a normal successor in interest that voluntarily assumes a position, is thrust into his shoes as a result of an appointment and was neither a party to the prepetition wrongdoing nor was in a position, prepetition, to rectify the wrongdoing. Id.

That the doctrine of <u>in pari delicto</u> should apply in a receivership but not in a chapter 7 bankruptcy makes no sense for several reasons. First, once a chapter 7 trustee is appointed, under 11 U.S.C. section 701, any culprits are removed, just as in a receivership. See the Addendum. Second, a chapter 7 trustee, similar to a receiver, is required to maximize the assets of the estate for the benefit of creditors. 11 U.S.C. § 704. See the Addendum. Third, the creditors of the bankruptcy estate benefit from the recoveries, just as defrauded investors or other creditors of a receivership benefit.

Merrill Lynch relies heavily upon the majority opinion in <u>Lafferty</u>. In that case, the majority ignored the real identity of the plaintiff, a chapter 7 trustee not involved in the prepetition misconduct, and relied upon the language of 11 U.S.C. section 541 to refuse to consider postpetition events. The majority concluded that the language "as of the commencement of the case" in 11 U.S.C. section 541 prevented the court from considering events, namely, the removal of the culprits when the trustee was appointed, and, as a result, the defense of <u>in pari delicto</u> could be asserted against the trustee. 267 F.3d at 355-56.

Since the Third Circuit issued its decision in <u>Lafferty</u>, the court has revisited the issue in the context of an action to avoid a prepetition fraudulent transfer under 11 U.S.C. section 548. See the Addendum. <u>McNamara v. PFS a/k/a Premium Financing Specialists (In re Personal and Business Insurance Agency)</u>, 334 F.3d 239 (3rd Cir. 2003). In <u>PBI</u>, the Third Circuit, relying upon <u>Lafferty</u>, agreed with a trustee that the court could consider postpetition events, specifically the appointment of the trustee, in actions based upon the trustee's avoidance powers. 334 F.3d at 246. The debtor was used as a pawn in an illegal scheme perpetrated by the debtor's CEO and sole owner. The trustee argued that, even if the court imputed the fraud by the debtor's CEO and sole owner to the debtor, the court had to consider the trustee's claim in light of a postpetition event, his appointment

or, otherwise, an inequitable result, namely, a loss to innocent creditors, would occur. Agreeing with the trustee, the court held that nothing in 11 U.S.C. section 548 precluded the court from considering the replacement of the debtor's CEO and sole owner by the trustee and the "concomitant removal of the taint" of his fraud from the debtor.  334 F.3d at 247.

The Third Circuit in <u>PBI</u> distinguished <u>Lafferty</u> on the basis that the trustee's action was under 11 U.S.C. section 548, which does not contain the "limiting language" of "as of the commencement" of the bankruptcy included in 11 U.S.C. section 541(a)(1), and that an "inequitable result" would be attained if the court were to apply the doctrine of <u>in pari delicto</u> against the trustee. The reasoning is flawed. First, 11 U.S.C. section 541 relates to property of the estate, not defenses. There is nothing in section 541 that even mentions defenses. See the Addendum to Merrill Lynch's Appellant's Brief. Second, 11 U.S.C. section 541(a)(3) provides that any property a trustee recovers under section 550 becomes property of the estate. This includes, for example, property recovered as a result of a successful avoidance of a prepetition fraudulent transfer, under 11 U.S.C. section 548, or property recovered as a result of a successful avoidance of a <u>postpetition</u> transfer not authorized by the Bankruptcy Code, under 11 U.S.C. section 549 (emphasis added). See the Addendum.

Additionally, the dissent in <u>Lafferty</u> points out that the Supreme Court has considered postpetition acts. In <u>Segal v. Rochelle</u>, 382 U.S. 375, 380, 86 S.Ct. 511, 514, 15 L.Ed.2d 428 (1966), the issue was "whether a trustee could claim as property of the estate a tax loss-carryback refund for a taxable year that ended postpetition." Although the Internal Revenue Code prohibited the refund from being claimed until the taxable year had ended, postpetition, the Supreme Court ruled that the tax refund, nevertheless, was property of the estate. 382 U.S. at 380, 86 S.Ct. at 514.

Regardless of whether property is property of the estate under 11 U.S.C. section 541(a)(1) or section 541(a)(3), the property is still property of the estate. There is no legal or practical reason

why a court should not consider postpetition events in an action under 11 U.S.C. section 541(a)(3), but not 11 U.S.C. section 541(a)(1), when the end result is that the property is property of the estate.

As the Third Circuit recognized in PBI, a court may decide not to apply the doctrine of in pari delicto to ensure that an equitable result is reached, for example, a trustee's recovering money for the benefit of innocent creditors, not prepetition perpetrators of fraud. Because the doctrine is concerned with preventing a wrongdoer from benefiting from his prepetition wrong – to which a trustee or innocent creditors were not a party and which the trustee could not have prevented – it would be perverse to apply the doctrine to prevent the trustee from recovering for the benefit of the innocent creditors.

Other cases upon which Merrill Lynch relies are similarly flawed because the majority in Lafferty merely relied upon those cases: (1) Sender v. Buchanan (In re Hedged Investments Associates, Inc.), 84 F.3d 1281 (10th Cir. 1996); (2) Terlecky v. Hurd (In re Dublin Securities, Inc.), 133 F.3d 377 (6th Cir. 1997); (3) Hirsch v. Arthur Anderson & Co., 72 F.3d 1085 (2nd Cir. 1995); and (4) Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2nd Cir. 1991). 267 F.2d at 357-58. Additionally, another case, Lutz v. Chitwood (In re Donahue  Securities, Inc.), relied upon Lafferty and Dublin Securities. 304 B.R. 797, 799 (Bankr. W.D. Ohio 2003).

In this case, the Trustee was not a party to the wrongdoing by the Stephen K. Chan, Michelle Lee and William D. Hulse. The Trustee, appointed upon the commencement of the ARC bankruptcy case, could not have prevented the wrongdoing. Thrust into his position, the Trustee is vindicating the rights of ARC, property of the estate under 11 U.S.C. section 541(a)(1), as the Trustee is required to do.

Since 11 U.S.C. section 541 explicitly relates to only property of the estate and has nothing to do with equitable defenses, this Court may consider postpetition events. Specifically, upon the

appointment of the Trustee, Messrs. Chan and Hulse and Miss Lee were removed from management and control of ARC. The bankruptcy court has not allowed any claims upon behalf of Messrs. Chan and Hulse and Miss Lee. A401. Permitting Merrill Lynch, which benefited from its relationship with ARC (A417, 419-420), to escape accountability would allow it to enjoy a windfall at the expense of innocent creditors who otherwise would receive distributions from the Trustee's recoveries.

In summary, the <u>raison d'être</u> of the doctrine of <u>in pari delicto</u> - a wrongdoer must not be allowed to profit from his wrong – disappeared more than six years ago when the Trustee was appointed upon the commencement of the involuntary bankruptcy case and when the Trustee ousted Messrs. Chan and Hulse and Miss Lee. The Trustee's recoveries would benefit innocent creditors, not Messrs. Chan and Hulse and Miss Lee. As a result, the Trustee is not subject to the <u>in pari delicto</u> doctrine.

By refusing to apply the doctrine of <u>in pari delicto</u>, this Court will avoid the traps into which some other courts have fallen.

## III.  MERRILLL LYNCH HAS WAIVED ITS ARGUMENT THAT THE TRUSTEE LACKS STANDING BECAUSE THE CLAIMS BELONG TO CREDITORS

In its appellant's brief, Merrill Lynch recognizes that it moved for summary judgment on three grounds, the last two of which are the two grounds listed above and the first of which was the following: "The Trustee lacks standing to assert the claims in this action because those claims are held only by creditors of the Debtor." Although Merrill Lynch did not include the first ground in its statement of issues (Bankruptcy Court docket no. 149) and also notes that the Bankruptcy Court "did not rule on this argument," Merrill Lynch "continue[s] to press" that argument in its appellate brief.

Because Merrill Lynch did not include the first ground in its statement of issues, Merrill Lynch has waived that issue on appeal. Bezanson v. Thomas, 2003 WL 21434911, at *2 (D.N.H. 2003). However, should this Court rule otherwise, the Trustee now will address that argument.

Merrill Lynch in its appellant's brief contends that the alleged damages the Trustee seeks are "dollar-for-dollar . . . the damages that [ARC's] creditors could have asserted against the estate" and that any recoveries by the Trustee will benefit only creditors, several of which have sued Merrill Lynch and some of which have settled with Merrill Lynch.

The controlling authority on whether a bankruptcy trustee has standing to sue is the First Circuit's opinion in Regan v. Vinick & Young (In re Rare Coin Galleries of America, Inc.), 862 F.2d 896 (1st Cir. 1988). In Rare Coin Galleries, principals of the debtor caused the debtor to file a petition under chapter 11 and the case was converted to chapter 7. The chapter 7 trustee commenced an adversary proceeding against the debtor's accountant, which had certified that financial reports conformed with generally accepted accounting principles, and others, seeking damages for alleged negligence, breach of contract, negligent misrepresentation, and unfair and deceptive acts or practices under Massachusetts General Laws chapter 93A. Simultaneously with the filing of his complaint, the trustee sought, and obtained, a preliminary injunction, which the accountant appealed.

On appeal, the First Circuit rejected the defendants' argument that the trustee's claims belonged to only the creditors because (1) the trustee had alleged damage to the debtor, (2) the debtor "clearly" could have brought the claims, and (3) the trustee stepped into the debtor's shoes for purposes of bringing or maintaining the debtor's causes of action. The First Circuit suggested that the appellants' confusion may have resulted from the trustee's repeated emphasis upon his assertions that the accountant's wrongdoing had caused customers of the debtor to lose money. The

14

First Circuit concluded that, despite the trustee's emphasis upon the customers' claims, the trustee was asserting claims that belonged to the estate under Massachusetts law. 862 F.2d at 900-01 (citation omitted).

The District Court's recent ruling in <u>Official Committee of Unsecured Creditors v. Boston Regional Medical Center, Inc. (In re Boston Regional Medical Center, Inc.)</u>, 328 F. Supp. 2d. 130 (D. Mass. 2004), further supports the Trustee's argument that he has standing. The District Court ruled that, while the creditors committee could not seek vindication of the rights of creditors, the committee could seek vindication of the rights of bankruptcy estate, which would benefit the creditors. 328 F. Supp. 2d at 144. The committee in <u>BRMC</u> alleged that the officers and directors had breached their fiduciary duties to the bankrupt debtor.

Contrary to Merrill Lynch's assertion, in the instant matter, the Trustee has alleged damage to ARC and is seeking recovery of those damages for bankruptcy estate. That any recoveries by the Trustee would benefit the creditors is not relevant in deciding whether the Trustee has standing. Similar to <u>Rare Coin Galleries</u>, Merrill Lynch's confusion may have resulted from the Trustee's allegations that the wrongdoing of Merrill Lynch and Burns ARC to incur additional debt.

Merrill Lynch cites <u>Rodolakis v. Shadduck (In re Shadduck)</u>, 208 B.R. 1 (Bankr. D. Mass. 1997), for the proposition that a trustee cannot assert claims that belong to creditors and that Congress has considered, and rejected, amending the Bankruptcy Code so that bankruptcy trustees would have the power to sue upon behalf of creditors in certain circumstances. Merrill Lynch's reliance is misplaced because <u>Shadduck</u> is distinguishable.

At issue in <u>Shadduck</u> was whether a trustee could prosecute creditors' allowed claims that would be nondischargeable as a result of the trustee's likely success in a separate, pending action seeking collection of nondischargeable claims from retirement benefits not a part of the bankruptcy

estate, but partially subject to creditor process under state law. <u>Shadduck</u> is distinguishable because the Trustee is seeking recovery for damages to ARC.

In summary, the Trustee, under the First Circuit's controlling law, <u>Rare Coin Galleries</u>, has standing to sue Merrill Lynch because he is vindicating the rights of the bankruptcy estate and not the claims of creditors. The rights of the bankruptcy estate are the claims of ARC against Merrill Lynch, and those claims were property of the bankruptcy estate as of the commencement of the bankruptcy case. 11 U.S.C. § 541(a)(1). Having stepped into the shoes of ARC, the Trustee not only may, but has exclusive standing to prosecute claims of the bankruptcy estate. <u>Gaudette</u>, 241 B.R. at 497.

CONCLUSION

A "sham" entity has standing to sue under the deepening insolvency theory. The Trustee, attempting to redress the injuries to ARC, has standing to sue to recover those damages. The in pari delicto doctrine does not apply to the Trustee because the raison d'être for the defense disappeared more than six years ago and any recovery would go to innocent creditors.

/s/ Janice G. Marsh
David M. Nickless, Trustee, BBO No. 371920
Janice G. Marsh, Esq., BBO No. 638575
Nickless and Phillips, PC
495 Main Street
Fitchburg, MA 01420
978-342-4590
dnickless.nandp@verizon.net
jmarsh.nandp@verizon.net

CERTIFICATE OF SERVICE

I, Janice G. Marsh, certify that, upon receipt of the notice of electronic service, I will immediately serve a copy of this pleading by mail to any of the parties listed below if not noted as having received electronic service:

Richard Zielinski                          Stephen M. Salon
Richard Renehan                          Salon & Kantrowitz LLP
Joseph C. Lyons                           Old City Hall
Goulston & Storrs, PC                  45 School Street
400 Atlantic Avenue                     Boston, MA 02108
Boston, MA 02110-3333             Attorney for Dennis Burns
Attorneys for Merrill Lynch, Pierce,
  Fenner & Smith, Inc.


Dated: December 3, 2004                          /s/ Janice G. Marsh
                                                              Janice G. Marsh

# ADDENDUM

Westlaw.

M.G.L.A. 155 § 6

**C**
Massachusetts General Laws Annotated Currentness
    Part I. Administration of the Government
        Title XXII. Corporations
            ▸▪ Chapter 155. General Provisions Relative to Corporations (Refs & Annos)
                ▸▪ Powers of Corporations

+++ CURRENT VERSION +++

VIEW ALL VERSIONS

        →§ 6. General powers

A corporation may, in its corporate name, sue and be sued, appear, prosecute and defend to final judgment or decree and execution; have a corporate seal, which it may alter at pleasure; elect in such manner as it may determine all necessary officers, fix their compensation and define their duties and obligations; and make by-laws and regulations consistent with law for its own government, the due and orderly conduct of its affairs and the management of its property. The clerk, or recording officer with the powers of clerk, shall be a resident of the commonwealth and shall be sworn.

CREDIT(S)

Amended by St.1949, c. 105.

HISTORICAL AND STATUTORY NOTES

1992 Main Volume

St.1808, c. 65, § 1.
St.1829, c. 53, § 1.
St.1833, c. 83, § 1.
R.S.1836, c. 38, § 6; c. 44, § 1.
G.S.1860, c. 60, § 2; c. 68, § 1.
P.S.1882, c. 105, § 4.
R.L.1902, c. 109, § 4.
St.1903, c. 437, §§ 4, cls. (b), (d), (e), (h), 95
St.1914, c. 742, §§ 17, 199.

CROSS REFERENCES

    Business corporation,
        Additional powers, see c. 156, § 4.
        By-laws, see c. 156, § 13.
        Certificate of incorporation, powers, rights and privileges, see c. 156, § 12
        Perpetual succession in corporate name, see c. 156, § 4.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

M.G.L.A. 156B § 9

**C**
Massachusetts General Laws Annotated Currentness
 Part I. Administration of the Government
  Title XXII. **Corporations**
   ❧ Chapter 156B. Certain Business **Corporations** (Refs & Annos)
    ❧ Organization

+++ CURRENT VERSION +++

VIEW ALL VERSIONS

→§ 9. Corporate powers; exceptions

Except as otherwise provided in its articles of organization, every **corporation** shall have power in furtherance of its **corporate** purposes:

(a) to have perpetual succession in its **corporate** name, unless a period for its duration is limited by special law or in its articles of organization;

(b) to sue and be sued;

(c) to have a corporate seal, which it may alter at pleasure;

(d) to elect or appoint directors, officers, employees and other agents, to fix their compensation and define their duties and obligations, and to indemnify such corporate personnel;

(e) to purchase, receive, take by grant, gift, devise, bequest or otherwise, lease, or otherwise acquire, own, hold, improve, employ, use and otherwise deal in and with, real or personal property, or any interest therein, wherever situated;

(f) to sell, convey, lease, exchange, transfer or otherwise dispose of, or mortgage, pledge, encumber or create a security interest in, all or any of its property, or any interest therein, wherever situated;

(g) to purchase, take, receive, subscribe for, or otherwise acquire, own, hold, vote, employ, sell, lend, lease, exchange, transfer, or otherwise dispose of, mortgage, pledge, use and otherwise deal in and with, bonds and other obligations, shares, or other securities or interests issued by others, whether engaged in similar or different business, governmental, or other activities;

(h) to make contracts, give guarantees and incur liabilities, borrow money at such rates of interest as the corporation may determine, issue its notes, bonds and other obligations, and secure any of its obligations by mortgage, pledge or encumbrance of, or security interest in, all or any of its property or any interest therein, wherever situated;

(i) to lend money, invest and reinvest its funds, and take and hold real and personal property as security for the payment of funds so loaned or invested;

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

M.G  A. 156B § 9

(j) to do business, carry on its operations, and have offices and exercise the powers granted by this chapter in any jurisdiction within or without the United States;

(k) to make donations, irrespective of corporate benefit, for the public welfare or for community fund, hospital charitable, religious, educational, scientific, civic or similar purposes, and in time of war or other national emergency in aid thereof;

(l) to pay pensions, establish and carry out pension, profit-sharing, share bonus, share purchase, share option, savings, thrift and other retirement, incentive and benefit plans, trusts and provisions for any or all of its directors, officers and employees, and for any or all of the directors, officers and employees of any corporation, fifty per cent or more of the shares of which outstanding and entitled to vote on the election of directors are owned, directly or indirectly, by it;

(m) to purchase, receive, take, or otherwise acquire, own, hold, sell, lend, exchange, transfer or otherwise dispose of, pledge, use and otherwise deal in and with its own shares;

(n) to participate as a subscriber in the exchanging of insurance contracts specified in section ninety-four B of chapter one hundred and seventy-five;

(o) to be an incorporator of other corporations of any type or kind; and

(p) to have and exercise all powers necessary or convenient to effect any or all of the purposes for w     the corporation is formed; provided that no such power shall be exercised in a manner inconsistent with this chap the general laws of the commonwealth.

CREDIT(S)

Added by St.1964, c. 723, §    Amended by St.1969, c. 392, §§ 4 to 6; St.1984, c. 189, § 112.

HISTORICAL AND STATUTORY NOTES

1992 Main Volume

St.1969, c. 392, § 4, approved June 5, 1969, in cl. (l), added ", and for any or all of the directors, officers and employees of any corporation, fifty per cent or more of the shares of which outstanding and entitled to vote on the election of directors are owned, directly or indirectly, by it".

Section 5 of St.1969, c. 392, in cl. (n), deleted "and" from the end

Section 6 of St.1969, c. 392, inserted cl. (o) and redesignated the former cl. (o) as cl. (p).

St.1984, c. 189, §   12, an emergency act, approved July 12, 1984, in cl. (l), substituted "to" for "To" where first appearing.

CROSS REFERENCES

    Business corporations, generally, see c. 156D, § 1.01 et seq

    Take-over bids, regulation, see c   10C, § 1 et seq.

.AW REVIEW AND JOURNAL COMMENTARIES

Copr. © 2004 West. No Claim to Orig    S. Govt. Works

Disallowance of claims of entity that is transferee of avoidable transfer, see 11 USCA § 502.

Effect of dismissal, see 11 USCA § 349.

Exemptions, see 11 USCA § 522.

Persons who may be debtors in Chapter nine case, see 11 USCA § 109.

Recovery of voidable transfers in investor protection liquidation proceedings, see 15 USCA § 78fff-2.

Transfers to defeat cases under this title, see 18 USCA § 152.

Voidable transfers in—

Commodity broker liquidation cases, see 11 USCA § 764.

Stockbroker liquidation cases, see 11 USCA § 749.

## § 548.   Fraudulent transfers and obligations

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

(2) A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which.—

(A) the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made; or

(B) the contribution made by a debtor exceeded the percentage amount of gross annual income specified in subparagraph (A), if the transfer was consistent with the practices of the debtor in making charitable contributions.

(b) The trustee of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, to a general partner in the debtor, if the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

(d)(1) For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

(2) In this section—

(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

(B) a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency that receives a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment;

(C) a repo participant that receives a margin payment, as defined in section 741 or 761 of this title, or settlement payment, as defined in section 741 of this title, in connection with a repurchase agreement, takes for value to the extent of such payment; and

(D) a swap participant that receives a transfer in connection with a swap agreement takes for value to the extent of such transfer.

(3) In this section, the term "charitable contribution" means a charitable contribution, as that term is defined in section 170(c) of the Internal Revenue Code of 1986, if that contribution—

(A) is made by a natural person; and

(B) consists of.—

  (i) a financial instrument (as that term is defined in section 731(c)(2)(C) of the Internal Revenue Code of 1986); or

  (ii) cash.

(4) In this section, the term "qualified religious or charitable entity or organization" means—

  (A) an entity described in section 170(c)(1) of the Internal Revenue Code of 1986; or

  (B) an entity or organization described in section 170(c)(2) of the Internal Revenue Code of 1986.

(Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2600; Pub.L. 97–222, § 5, July 27, 1982, 96 Stat. 236; Pub.L. 98–353, Title III, §§ 394, 463, July 10, 1984, 98 Stat. 365, 378; Pub.L. 99–554, Title II, § 283(n), Oct. 27, 1986, 100 Stat. 3117; Pub.L. 101–311, Title I, § 104, Title II, § 204, June 25, 1990, 104 Stat. 268, 269; Pub.L. 103–394, Title V, § 501(b)(5), Oct. 22, 1994, 108 Stat. 4142; Pub.L. 105–183, §§ 2, 3(a), June 19, 1998, 112 Stat. 517.)

## HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1978 Acts.** This section is derived in large part from section 67d of the Bankruptcy Act [section 107(d) of former Title 11]. It permits the trustee to avoid transfers by the debtor in fraud of his creditors. Its history dates from the statute of 13 Eliz. c. 5 (1570).

The trustee may avoid fraudulent transfers or obligations if made with actual intent to hinder, delay, or defraud a past or future creditor. Transfers made for less than a reasonably equivalent consideration are also vulnerable if the debtor was or thereby becomes insolvent, was engaged in business with an unreasonably small capital, or intended to incur debts that would be beyond his ability to repay.

The trustee of a partnership debtor may avoid any transfer of partnership property to a partner in the debtor if the debtor was or thereby became insolvent.

If a transferee's only liability to the trustee is under this section, and if he takes for value and in good faith, then subsection (c) grants him a lien on the property transferred, or other similar protection.

Subsection (d) specifies that for the purposes of fraudulent transfer section, a transfer is made when it is valid against a subsequent bona fide purchaser. If not made before the commencement of the case, it is considered made immediately before then. Subsection (d) also defines "value" to mean property, or the satisfaction or securing of a present or antecedent debt, but does not include an unperformed promise to furnish support to the debtor or a relative of the debtor. Senate Report No. 95–989.

**1982 Acts.** House Report No. 97–420, see 1982 U.S. Code Cong. and Adm. News, p. 583.

**1984 Acts.** Statements by Legislative Leaders, see 1984 U.S. Code Cong. and Adm. News, p. 576.

**1986 Acts.** House Report No. 99–764 and House Conference Report No. 99–958, see 1986 U.S. Code Cong. and Adm. News, p. 5227.

**1990 Acts.** House Report No. 101–484, see 1990 U.S. Code Cong. and Adm. News, p. 223.

**1994 Acts.** House Report No. 103–835, see 1994 U.S. Code Cong. and Adm. News, p. 3340.

**1998 Acts.** Statement by President, see 1998 U.S. Code Cong. and Adm. News, p. 230.

**Legislative Statements**

Section 548(d)(2) is modified to reflect general application of a provision contained in section 766 of the Senate amendment with respect to commodity brokers. In particular, section 548(d)(2)(B) of the House amendment makes clear that a commodity broker who receives a margin payment is considered to receive the margin payment in return for "value" for purposes of section 548.

**Effective and Applicability Provisions**

**1994 Acts.** Amendment by Pub.L. 103–394 effective on Oct. 22, 1994, and not to apply with respect to cases commenced under Title 11 of the United States Code before Oct. 22, 1994, see section 702 of Pub.L. 103–394, set out as a note under section 101 of this title.

**1986 Acts.** Amendment by Pub.L. 99–554, effective 30 days after Oct. 27, 1986, except as otherwise provided for, see section 302(a) of Pub.L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

**1984 Acts.** Amendment by Pub.L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a), formerly 553(a), of Pub.L. 98–353, set out as a note under section 101 of this title.

**Separability of Provisions**

If any provision of or amendment made by Pub.L. 103–394 or the application of such provision or amendment to any person or circumstance is held to be unconstitutional, the remaining provisions of and amendments made by Pub.L. 103–394 and the application of such provisions and amendments to any person or circumstance shall not be affected thereby, see section 701 of Pub.L. 103–394, set out as a note under section 101 of this title.

**Applicability**

Applicability of amendments made by Pub.L. 105–183 to any case brought under an applicable provision of this title that is pending or commenced on or after June 19, 1998, see Pub.L. 105–183, § 5, June 19, 1998, 112 Stat. 518, set out as a note under section 544 of this title.

**Rule of Construction**

Amendments made by Pub.L. 105–183 not intended to limit the applicability of the Religious Freedom Restoration Act of 1993 (42 U.S.C. 2002bb et seq.), see Pub.L. 105–183, § 6, June 19, 1998, 112 Stat. 519, set out as a note under section 544 of this title.

## CROSS REFERENCES

Applicability of this section in Chapter nine cases, see 11 USCA § 901.

Appointment of trustee upon debtor's refusal to pursue cause of action under this section, see 11 USCA § 926.

Commencement of involuntary cases by transferees of voidable transfers, see 11 USCA § 303.

Disallowance of claims of entity that is transferee of avoidable transfer, see 11 USCA § 502.

Effect of dismissal, see 11 USCA § 349.

Exemptions, see 11 USCA § 522.

Inappropriate transfers included in determining net worth of employer, see 29 USCA § 1362.

Recovery of voidable transfers in investor protection liquidation proceedings, see 15 USCA § 78fff–2.

Transfers to defeat cases under this title, see 18 USCA § 152.

Voidable transfers in—

Commodity broker liquidation cases, see 11 USCA § 764.

Stockbroker liquidation cases, see 11 USCA § 749.

## § 549.  Postpetition transactions

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

(d) An action or proceeding under this section may not be commenced after the earlier of—

(1) two years after the date of the transfer sought to be avoided; or

(2) the time the case is closed or dismissed.

(Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2601; Pub.L. 98–353, Title III, § 464, July 10, 1984, 98 Stat. 379; Pub.L. 99–554, Title II, § 283(o), Oct. 27, 1986, 100 Stat. 3117; Pub.L. 103–394, Title V, § 501(d)(18), Oct. 22, 1994, 108 Stat. 4146.)

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1978 Acts.** This section modifies section 70d of current law [section 110(d) of former Title 11].  It permits the trustee to avoid transfers of property that occur after the commencement of the case.  The transfer must either have been unauthorized, or authorized under a section that protects only the transferor.  Subsection (b) protects "involuntary gap" transferees to the extent of any value (including services, but not including satisfaction of a debt that arose before the commencement of the case), given after commencement in exchange for the transfer.  Notice or knowledge of the transferee is irrelevant in determining whether he is protected under this provision.  Senate Report No. 95–989.

**1984 Acts.** Statements by Legislative Leaders, see 1984 U.S. Code Cong. and Adm. News, p. 576.

**1986 Acts.** House Report No. 99–764 and House Conference Report No. 99–958, see 1986 U.S. Code Cong. and Adm. News, p. 5227.

**1994 Acts.** House Report No. 103–835, see 1994 U.S. Code Cong. and Adm. News, p. 3340.

**Legislative Statements**

Section 549 of the House amendment has been redrafted in order to incorporate section 342(b) and (c) of the Senate amendment.  Those sections have been consolidated and redrafted in section 549(c) of the House amendment.  Section 549(d) of the House amendment adopts a provision contained in section 549(c) of the Senate amendment.

**Effective and Applicability Provisions**

**1994 Acts.** Amendment by Pub.L. 103–394 effective on Oct. 22, 1994, and not to apply with respect to cases commenced under Title 11 of the United States Code before Oct. 22, 1994, see section 702 of Pub.L. 103–394, set out as a note under section 101 of this title.

**1986 Acts.** Amendment by Pub.L. 99–554 effective 30 days after Oct. 27, 1986, except as otherwise provided for, see section 302(a) of Pub.L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

**1984 Acts.** Amendment by Pub.L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a), formerly 553(a), of Pub.L. 98–353, set out as a note under section 101 of this title.

**Separability of Provisions**

If any provision of or amendment made by Pub.L. 103–394 or the application of such provision or amendment to any person or circumstance is held to be unconstitutional, the remaining provisions of and amendments made by Pub.L. 103–394 and the application of such provisions and amendments to any person or circumstance shall not be affected thereby, see section 701 of Pub.L. 103–394, set out as a note under section 101 of this title.

## CROSS REFERENCES

Applicability of subsecs. (a), (c) and (d) of this section in Chapter 9 cases, see 11 USCA § 901.

Appointment of trustee upon debtor's refusal to pursue cause of action under this section, see 11 USCA § 926.

Commencement of involuntary cases by transferees of voidable transfers, see 11 USCA § 303.

Disallowance of claims of entity that is transferee of avoidable transfer, see 11 USCA § 502.

Effect of dismissal, see 11 USCA § 349.

Exemptions, see 11 USCA § 522.

Inappropriate transfers included in determining net worth of employer, see 29 USCA § 1362.

Recovery of voidable transfers in investor liquidation proceedings, see 15 USCA § 78fff–2.

Voidable transfers in—

Commodity broker liquidation cases, see 11 USCA § 764.

Stockbroker liquidation cases, see 11 USCA § 749.

## § 550. Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section¹ (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) If a transfer made between 90 days and one year before the filing of the petition—

(1) is avoided under section 547(b) of this title; and

(2) was made for the benefit of a creditor that at the time of such transfer was an insider;

the trustee may not recover under subsection (a) from a transferee that is not an insider.

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and

(B) any increase in the value of such property as a result of such improvement, of the property transferred.

(2) In this subsection, "improvement" includes—

(A) physical additions or changes to the property transferred;

(B) repairs to such property;

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and

(E) preservation of such property.

(f) An action or proceeding under this section may not be commenced after the earlier of—

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or

(2) the time the case is closed or dismissed.

(Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2601; Pub.L. 98–353, Title III, § 465, July 10, 1984, 98 Stat. 379; Pub.L. 103–394, Title II, § 202, Oct. 22, 1994, 108 Stat. 4121.)

¹ So in original. Probably should be "subsection".

## HISTORICAL AND STATUTORY NOTES

### Revision Notes and Legislative Reports

**1978 Acts.** Section 550 prescribes the liability of a transferee of an avoided transfer, and enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee. Subsection (a) permits the trustee to recover from the initial transferee of an avoided transfer or from any immediate or mediate transferee of the initial transferee. The words "to the extent that" in the lead in to this subsection are designed to incorporate the protection of transferees found in proposed 11 U.S.C. 549(b) and 548(c). Subsection (b) limits the liability of an immediate or mediate transferee of the initial transferee if such secondary transferee takes for value, in good faith and without knowledge of the voidability of the transfer. An immediate or mediate good faith transferee of a protected secondary transferee is also shielded from liability. This subsection is limited to the trustee's right to recover from subsequent transferees under subsection (a)(2). It does not limit the trustee's rights against the initial transferee under subsection (a)(1). The phrase "good faith" in this paragraph is intended to prevent a transferee from whom the trustee could recover from transferring the recoverable property to an innocent transferee, and receiving a retransfer from him, that is, "washing" the transaction through an innocent third party. In order for the transferee to be excepted from liability under this paragraph, he himself must be a good faith transferee. Subsection (c) is a further limitation on recovery. It specifies that the trustee is entitled to only one satisfactory, under subsection (a), even if more than one transferee is liable.

Objection to allowance of claims by creditor of partner in partnership that is debtor under this chapter, see 11 USCA § 502.

Payment of trustee from filing fee, see 11 USCA § 330.

Persons required to make returns of income under this chapter, see 26 USCA § 6012.

Persons who may be debtors under this chapter, see 11 USCA § 109.

Property of estate in cases converted to this chapter from—

    Chapter thirteen, see 11 USCA § 1306.

    Chapter twelve, see 11 USCA § 1207.

Recommendation by trustee of conversion from chapter 11 to this chapter, see 11 USCA § 1106.

Special tax provisions, see 11 USCA § 346.

Stay of action against codebtor in cases converted to this chapter from—

    Chapter thirteen, see 11 USCA § 1301.

    Chapter twelve, see 11 USCA § 1201.

Transfers enabling creditor to receive more than under this chapter, see 11 USCA § 547.

Treatment of debtor's estate in cases under this chapter as taxpayer for certain income tax purposes, see 26 USCA § 108.

Unclaimed property, see 11 USCA § 347.

## SUBCHAPTER I—OFFICERS AND ADMINISTRATION

### CROSS REFERENCES

Applicability of this subchapter in investor protection liquidation proceedings, see 15 USCA § 78fff.

Subchapter applicable only in case under this chapter, see 11 USCA § 103.

## § 701. Interim trustee

(a)(1) Promptly after the order for relief under this chapter, the United States trustee shall appoint one disinterested person that is a member of the panel of private trustees established under section 586(a)(1) of title 28 or that is serving as trustee in the case immediately before the order for relief under this chapter to serve as interim trustee in the case.

(2) If none of the members of such panel is willing to serve as interim trustee in the case, then the United States trustee may serve as interim trustee in the case.

(b) The service of an interim trustee under this section terminates when a trustee elected or designated under section 702 of this title to serve as trustee in the case qualifies under section 322 of this title.

(c) An interim trustee serving under this section is a trustee in a case under this title.

(Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2604; Pub.L. 99–554, Title II, § 215, Oct. 27, 1986, 100 Stat. 3100.)

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**

**1978 Acts.** This section requires the court to appoint an interim trustee. The appointment must be made from the panel of private trustees established and maintained by the Director of the Administrative Office under proposed 28 U.S.C. 604(e).

Subsection (a) requires the appointment of an interim trustee to be made promptly after the order for relief, unless a trustee is already serving in the case, such as before a conversion from a reorganization to a liquidation case.

Subsection (b) specifies that the appointment of an interim trustee expires when the permanent trustee is elected or designated under section 702.

Subsection (c) makes clear that an interim trustee is a trustee in a case under the bankruptcy code.

Subsection (d) provides that in a commodity broker case where speed is essential the interim trustee must be appointed by noon of the business day immediately following the order for relief. Senate Report No. 95–989.

**1986 Acts.** House Report No. 99–764 and House Conference Report No. 99–958, see 1986 U.S.Code Cong. and Adm.News, p. 5227.

**Legislative Statements**

The House amendment deletes section 701(d) of the Senate amendment. It is anticipated that the Rules of Bankruptcy Procedure will require the appointment of an interim trustee at the earliest practical moment in commodity broker bankruptcies, but no later than noon of the day after the date of the filing of the petition, due to the volatility of such cases.

**Effective and Applicability Provisions**

**1986 Acts.** Amendment by Pub.L. 99–554 effective 30 days after Oct. 27, 1986, except as otherwise provided for, see section 302(a) of Pub.L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by Pub.L. 99–554, § 215, not to become effective in or with respect to certain specified judicial districts until, or apply to cases while pending in such district before, the expiration of the 270-day period beginning 30 days after Oct. 27, 1986, or of the 30-day period beginning on the date the Attorney General certifies under section 303 of Pub.L. 99–554 the region specified in a paragraph of section 581(a) of Title 28, as amended by section 111(a) of Pub.L. 99–554, that includes such district, whichever occurs first, see section 302(d)(1) of Pub.L. 99–554, set out as a note under section 581 of Title 28.

Amendment by Pub.L. 99–554, § 215, not to become effective in or with respect to certain specified judicial districts until, or apply to cases while pending in such district before, the expiration of the 2-year period beginning 30 days after Oct. 27, 1986, or of the 30-day period beginning on the date the Attorney General certifies under section 303 of Pub.L. 99–554 the region specified in a paragraph of section 581(a) of Title 28, as amended by section 111(a) of Pub.L. 99–554, that includes such district, whichever occurs first, see section 302(d)(2) of Pub.L. 99–554, set out as a note under section 581 of Title 28.

Amendment by Pub.L. 99–554, § 215, not to become effective in or with respect to judicial districts established for the States of Alabama and North Carolina until, or apply to

13 of Title 11 commenced before 30 days after Oct. 27, 1986, and pending in a judicial district referred to in section 581(a) of Title 28, as amended by section 111(a) of Pub.L. 99–554, for which a United States trustee is not authorized before 30 days after Oct. 27, 1986 to be appointed, not applicable until the expiration of the 3-year period beginning on Oct. 27, 1986, or of the 1-year period beginning on the date the Attorney General certifies under section 303 of Pub.L. 99–554 the region specified in a paragraph of such section 581(a) that includes, such district, whichever occurs first, see section 302(e)(1), (2) of Pub.L. 99–554, set out as a note under section 581 of Title 28.

**1984 Acts.** Amendment by Pub.L. 98–353 effective with respect to cases filed 90 days after July 10, 1984, see section 552(a), formerly 553(a), of Pub.L. 98–353, set out as a note under section 101 of this title.

### CROSS REFERENCES

Effect of vacancy in office of trustee, see 11 USCA § 325.
Grain storage facility bankruptcies, expedited appointment of trustee, see 11 USCA § 557.

Qualification of trustee, see 11 USCA § 322.

## § 704.  Duties of trustee

The trustee shall—

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;

(4) investigate the financial affairs of the debtor;

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) if advisable, oppose the discharge of the debtor;

(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and

(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

(Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2605; Pub.L. 98–353, Title III, §§ 311(a), 474, July 10, 1984, 98 Stat. 355, 381; Pub.L. 99–554, Title II, § 217, Oct. 27, 1986, 100 Stat. 3100.)

## HISTORICAL AND STATUTORY NOTES

### Revision Notes and Legislative Reports

**1978 Acts.** The essential duties of the trustee are enumerated in this section. Others, or elaborations on these, may be prescribed by the Rules of Bankruptcy Procedure to the extent not inconsistent with those prescribed by this section. The duties are derived from section 47a of the Bankruptcy Act [section 75(a) of former Title 11].

The trustee's principal duty is to collect and reduce to money the property of the estate for which he serves, and to close up the estate as expeditiously as is compatible with the best interests of parties in interest. He must be accountable for all property received, and must investigate the financial affairs of the debtor. If a purpose would be served (such as if there are assets that will be distributed), the trustee is required to examine proofs of claims and object to the allowance of any claim that is improper. If advisable, the trustee must oppose the discharge of the debtor, which is for the benefit of general unsecured creditors whom the trustee represents.

The trustee is responsible to furnish such information concerning the estate and its administration as is requested by a party in interest. If the business of the debtor is authorized to be operated, then the trustee is required to file with governmental units charged with the responsibility for collection or determination of any tax arising out of the operation of the business periodic reports and summaries of the operation, including a statement of receipts and disbursements, and such other information as the court requires. He is required to give constructive notice of the commencement of the case in the manner specified under section 342(b). Senate Report No. 95–989.

**1984 Acts.** Statements by Legislative Leaders, see 1984 U.S.Code Cong. and Adm.News, p. 576.

**1986 Acts.** House Report No. 99–764 and House Conference Report No. 99–958, see 1986 U.S.Code Cong. and Adm.News, p. 5227.

### Legislative Statements

Section 704(8) of the Senate amendment is deleted in the House amendment. Trustees should give constructive notice of the commencement of the case in the manner specified under section 549(c) of title 11.

### Effective and Applicability Provisions

**1986 Acts.** Amendment by Pub.L. 99–554 effective 30 days after Oct. 27, 1986, except as otherwise provided for, see section 302(a) of Pub.L. 99–554, set out as a note under section 581 of Title 28, Judiciary and Judicial Procedure.

Amendment by Pub.L. 99–554, § 217, not to become effective in or with respect to certain specified judicial districts until, or apply to cases while pending in such district before, the expiration of the 270-day period beginning 30 days after Oct. 27, 1986, or of the 30-day period beginning on the date the Attorney General certifies under section 303 of Pub.L. 99–554 the region specified in a paragraph of section 581(a) of Title 28, as amended by section 111(a) of Pub.L. 99–554, that includes such district, whichever occurs first, see section 302(d)(1) of Pub.L. 99–554, set out as a note under section 581 of Title 28.

Amendment by Pub.L. 99–554, § 217, not to become effective in or with respect to certain specified judicial districts