UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re<br>Advanced RISC Corporation,<br>    Debtor(s) |  |
| David M. Nickless, Trustee,<br>    Plaintiff/Appellee<br><br>v.<br><br>Merrill Lynch, Pierce, Fenner & Smith,<br>Inc. and Dennis Burns,<br>    Defendants/Appellants | Bankruptcy Appeal<br>C.A. No. 04-40123-NMG |

**ON APPEAL FROM A JUNE 8, 2004 ORDER OF THE
BANKRUPTCY COURT DENYING MERRILL LYNCH, PIERCE,
FENNER & SMITH'S MOTION FOR SUMMARY JUDGMENT**

<u>**REPLY BRIEF OF DEFENDANT-APPELLANT
MERRILL LYNCH, PIERCE, FENNER & SMITH**</u>

Richard M. Zielinski (BBO #540060)
Richard W. Renehan (BBO # 416680)
Joseph C. Lyons (BBO #644954)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110
617-482-1776

Dated:  December 13, 2004

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

    1. SHAM CORPORATIONS ARE INCAPABLE OF SUFFERING DEEPENING INSOLVENCY DAMAGES ............................................................................... 1

    2. THE DOCTRINE OF *IN PARI DELICTO* BARS THE TRUSTEE'S CLAIMS..... 5

CONCLUSION .................................................................................................................. 7

# TABLE OF AUTHORITIES

## CASES

Feltman v. Prudential Bache Securities, 122 B.R. 466 (S.D. Fla. 1990) ............................. 1
In re Hedged-Investments, Inc., 84 F.3d 1281, 1285 (10th Cir. 1996) ............................ 5
Loyd v. Paine Webber, Inc., 208 F.3d 755 (9th Cir. 2000) ............................................... 3
McNamara v. Premium Financing Specialists, 334 F.3d 239 (3d Cir. 2003) ................. 5, 6
O'Halloran v. First Union National Bank of Florida, 350 F.3d 1197 (11th Cir. 2003) .. 1, 2
Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340 (3d Cir. 2001) ........................................................................................................................ 5
Schacht v. Brown, 711 F.2d 1343 (7th Cir 1983) ............................................................ 2, 3
Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995) ............................................................... 3

## STATUTES

11 U.S.C. § 541 .............................................................................................................. 5, 6
11 U.S.C. § 548 .................................................................................................................. 6

## INTRODUCTION

A careful review of the Trustee's Brief makes it clear that Merrill Lynch is entitled to summary judgment on both of the two issues raised on appeal,[1] for three reasons:

1. The Trustee has failed to demonstrate that there are material disputes of fact that would warrant a two (or more) week jury trial in this case;

2. The Trustee has failed to articulate any good reason why the somewhat novel "deepening insolvency" theory, intended to preserve the intrinsic value of legitimate companies, should apply to the Debtor – which was nothing more than a sham corporation and an "engine of fraud";

3. The Trustee has not cited *a single case* on point which came out differently from the six federal appellate decisions cited by Merrill Lynch, all of which granted motions to dismiss or summary judgment on *in pari delicto* grounds on facts virtually identical to this case. The Trustee's policy arguments on *in pari delicto* have been rejected by the courts and, in any event, are unsupported by the record.

## ARGUMENT

### 1. SHAM CORPORATIONS ARE INCAPABLE OF SUFFERING DEEPENING INSOLVENCY DAMAGES

a. The Trustee's attempt to distinguish Feltman v. Prudential Bache Securities, 122 B.R. 466 (S.D. Fla. 1990) and O'Halloran v. First Union National Bank of Florida, 350 F.3d 1197 (11th Cir. 2003), two cases in which a trustee lacked standing to recover money the debtor obtained through fraud, is unavailing. As in this case, the criminal in Feltman created and controlled sham corporations to carry out fraudulent schemes. The Court in Feltman properly concluded that any injury to such sham corporations is "as illusory as was their corporate identity." 122 B.R. at 473-74.

---

[1] The Trustee also claims that Merrill Lynch has "waived" its argument that the Trustee has no standing because the claims belong to the creditors of the Debtor. The Trustee is wrong. The fact that Merrill Lynch sought, and this Court granted, interlocutory review on two issues does not mean that Merrill Lynch has waived any other argument or defense in this case.

The Trustee also misses the point of O'Halloran. In that case, the Eleventh Circuit concluded that the debtor, Greater Ministries, "cannot be said to have suffered injury from the scheme it perpetrated" and therefore the Trustee had no standing to sue Greater Ministries' bank for its role in Greater Ministries' Ponzi scheme. 350 F.3d at 1202-03. It did allow the Trustee to sue the bank for its role in allowing the individual who ran Greater Ministries to embezzle money that Greater Ministries acquired through the Ponzi scheme. Id. at 1204. But that is not a "deepening insolvency" theory of damages. The Trustee in this case is not suing Merrill Lynch for embezzling ARC's money or property. Rather, the Trustee is suing Merrill Lynch to recover the very money that the Debtor procured through its fraudulent scheme, a claim the O'Halloran court did not permit.

Moreover, the O'Halloran court stated that "[i]f ... Greater Ministries were merely the alter ego of [the individual who ran it], we might agree with the District Court that there was also no standing for the embezzlement count." Id. at 1204. Given that Greater Ministries had "a significant membership and governing body," conducted services, and engaged in charitable activities, the O'Halloran Court was unwilling to make such a ruling at the motion to dismiss stage. Id. at 1199, 1204. In this case, discovery is complete, and there is no dispute that the Debtor *was* the alter ego of Chan, Lee, and Hulse. They created and controlled the Debtor and used it as an engine of fraud, and there is no evidence in the record of any independent officer or director who could have stopped the scheme.

b.   Contrary to the Trustee's argument at pages 4-5 of his Brief, Schacht v. Brown, 711 F.2d 1343 (7th Cir 1983), does not hold or even imply that sham entities can

suffer deepening insolvency damages. While the court in Schacht acknowledged the *theory* of deepening insolvency, there is no suggestion that the insurance company at issue in that case was a sham entity. See id. at 1345-46. Rather, the allegations in Schacht presented a textbook case of deepening insolvency – the directors prolonged the life of a legitimate corporation beyond the point of insolvency. Id. at 1345-46, 1350 (holding that the "'asset dissipation' alleged was not only that which resulted from the normal operation of the business, ... but also that which resulted from the bleeding of [the corporation] which was part of the underlying scheme to defraud" state insurance regulators into believing that the corporation had sufficient assets to continue to sell insurance).

  c. The Trustee relies on Loyd v. Paine Webber, Inc., 208 F.3d 755 (9th Cir. 2000), and Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995), for the proposition that all corporations, even sham entities, can suffer deepening insolvency damages. As a threshold matter, the language on which the Trustee relies in Loyd is dicta – the court denied recovery to the plaintiffs in that case. More importantly, however, the court in Loyd failed to recognize that the fundamental rationale underlying the deepening insolvency theory, *i.e.*, that timely disclosure of insolvency may revitalize a legitimate corporation or preserve shareholders' equity, does not apply in the case of a sham corporation like the Debtor, which had no invested equity capital, goodwill, intellectual property, or other intangible assets. (A021, 027, 030, 282, 291, 362-363, 545-550).

  The receiver in Scholes did not seek to recover deepening insolvency damages, but rather brought a fraudulent conveyance action in effort to recoup money that the corporation had paid to various third parties. 56 F.3d at 752-54.

In support of his argument that a "sham" corporation can suffer deepening insolvency damages, the Trustee points to approximately $5 million of assets listed on ARC's books at the time it filed for bankruptcy. (See Trustee's brief at 5 and A358) The Trustee does not and cannot, however, dispute that these assets were all acquired using the proceeds of Debtor's fraudulent equipment loans. They do not establish that the Debtor ever had any intrinsic value worth saving (the rationale underlying the deepening insolvency cases). They merely show that Chan, Lee, and Hulse had not successfully dissipated all of the proceeds at the time their fraudulent scheme was exposed. The Debtor was worthless the day it was formed, was equally worthless at the time it entered into the fraudulent equipment lease transactions, and worthless when it eventually was forced into bankruptcy. The Debtor was neither burdened by debt (there was no intention to repay it) nor worried about the dissipation of its assets, because its purpose was to funnel money to its principals. The fact that there may be some assets remaining to distribute to the creditors may mitigate *their* losses to some degree. It does not, however, give the Trustee standing to recover $14 million of deepening insolvency damages *on behalf of the Debtor* - which was a mere "engine of fraud" used to perpetrate the criminal scheme of Chan, Lee, and Hulse.

    d.    Finally, at page 8 of his Brief, the Trustee makes a half-hearted argument that ARC may not have been a sham, describing it as a "nascent corporation" which was full of "potential."[2] This argument relies entirely on the deposition testimony of William

---

[2] The Trustee's claim that ARC had only recently incorporated is disingenuous, at best. The Trustee moved in a related adversary proceeding in the bankruptcy court to have MSC's veil pierced and declared one and the same entity as ARC. (A046, 016, 0545) Furthermore, while Merrill Lynch does not contest that ARC incorporated in May of 1997, it does point out that the page in the Appendix that the Trustee cites to provide the incorporation date (A351) comes from the report of the Trustee's expert, Howard Gordon, whose statements regarding the Debtor's purported business activities do not constitute admissible evidence for the purpose of Fed. R. Civ. P. 56(e).

Hulse, who pled guilty to Count One of the Superseding Indictment, which explicitly described MSC and ARC as sham companies. (A029, A088, A167, A548) Moreover, elsewhere in his deposition Hulse conceded he had "nothing to do with any ARC operations" and admitted he now believes that ARC "was fraudulent." (A525-526) Hulse's rank and self-serving speculation as to what ARC might have done hardly creates a triable issue of fact. Indeed, it is undisputed that ARC never performed a disaster recovery and its product, the Intelligent Relay System (IRS) rack, was nothing more than a "black box" that a leasing company could look at. (A026, 213, 315, 320, 545-550)

2.  **THE DOCTRINE OF *IN PARI DELICTO* BARS THE TRUSTEE'S CLAIMS**

    a.  In the face of at least six federal appeals court decisions from four circuits applying the *in pari delicto* defense in cases just like this one, the Trustee relies on: (i) a *dissenting opinion* in Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340 (3d Cir. 2001), a case that plainly supports Merrill Lynch's reliance on the defense, and (ii) two ***receivership*** cases in which the receiver, unlike the Trustee, was not bound by the Section 541 of the Bankruptcy Code. See 11 U.S.C. § 541. Under Section 541, a trustee succeeds *only to the interests that the debtor held pre-petition*, meaning that the bankruptcy trustee is subject to all defenses that could have been raised against the debtor prior to the commencement of the bankruptcy filing. See, i.e., Lafferty, 267 F.3d at 357; In re Hedged-Investments, Inc., 84 F.3d 1281, 1285 (10th Cir. 1996).

    b.  The Trustee's citation of McNamara v. Premium Financing Specialists, 334 F.3d 239 (3d Cir. 2003), merely underscores the limitation that Section 541 places on the Trustee. In that case, the trustee brought a claim for fraudulent conveyance pursuant

to Section 548 of the Bankruptcy Code. 11 U.S.C. § 548. The Third Circuit did not apply the *in pari delicto* doctrine to the trustee because he, unlike the creditors' committee in Lafferty, brought his claim pursuant to Section 548 and *not* Section 541. 334 F.3d at 245. The court reasoned that Section 541 "specifically bars consideration of events [such as the appointment of a trustee] that occur ... after the commencement of the bankruptcy," where as Section 548 "has no such language."[3] 334 F.3d at 245. Indeed, Section 548 itself is the exception which proves the rule that, in general, a bankruptcy trustee stands in the shoes of the debtor and is subject to all defenses that could have been asserted against the debtor prior to the filing of a bankruptcy petition.

  c. The Trustee's "policy" argument – that the application of the *in pari delicto* doctrine will somehow result in inequities – has been rejected by every court that has considered it and, in any event, is unsupported by the record. First, the defense of *in pari delicto* itself is grounded in the equitable notion that the principal wrongdoer (here, the Debtor, as controlled by Chan and his criminal associates) should not be permitted to recover from a third party who allegedly assisted the principals. Second, the creditors who are the alleged victims of Chan's scheme have had the opportunity to sue Merrill Lynch, and several have done so. Indeed, two of those cases settled. (A030-031, 036-037, 365-383, 548-549) Finally, the Trustee's claim that Merrill Lynch has "enjoy[ed] a windfall at the expense of innocent creditors" is without any basis in fact – Merrill Lynch received none of the proceeds that the Debtor procured through the fraudulent equipment lease, beyond a modest commission on the Debtor's deposits.

---

[3] Indeed, the court in McNamera noted that "the Lafferty Court made clear that its holding did not extend to actions brought under Code sections other than § 541, and it specifically stated that the 'trustee's avoiding powers are not implicated here, as they relate to the trustee's power to resist pre-bankruptcy transfers of property.'" Id.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Merrill Lynch's brief filed on November 17, 2004, Merrill Lynch requests that this Court reverse the Order of the Bankruptcy Court denying Merrill Lynch's Motion for Summary Judgment and enter judgment in its favor on all Counts of the Complaint.

>MERRILL, LYNCH, PIERCE,
>FENNER & SMITH, INC.
>
>By Their Attorneys,
>
>_____
>Richard M. Zielinski (BBO #540060)
>Richard W. Renehan (BBO # 416680)
>Joseph C. Lyons (BBO #644954)
>GOULSTON & STORRS, P.C.
>400 Atlantic Avenue
>Boston, MA 02110
>617-482-1776

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2004, I caused the foregoing to be served upon the attorneys of record listed below by mail.

_/s/ Joseph C. Lyons_
Joseph C. Lyons

David M. Nickless, Trustee
Janice G. Marsh, Esq.
Nickless & Phillips, P.C.
495 Main Street
Fitchburg, MA  01420

Stephen M. Salon, Esq.
Salon & Kantrowitz, LLP
Old City Hall
45 School Street
Boston, MA 02108